In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Mark A. PHILLIPS, Attorney at Law:

OFFICE OF LAWYER REGULATION,
Complainant-Respondent,

v.

Mark A. PHILLIPS, Respondent-Appellant.

Supreme Court

*No. 2004AP1914–D. Submitted on briefs December 13, 2005.
—Decided May 12, 2006.*

2006 WI 43

(Also reported in 713 N.W.2d 629.)

90

For the respondent-appellant there were briefs by *Mark A. Phillips* and *Law Offices of Mark A. Phillips SC,* Brookfield.

For the complainant-respondent there was a brief by *Gregg Herman, Matthew J. Price,* and *Loeb & Herman, S.C.,* Milwaukee.

¶ 1. PER CURIAM. Attorney Mark A. Phillips appeals from the referee's report and recommendation that his license to practice law in Wisconsin be suspended for a period of one year, that he be ordered to pay $145,000 and certain related expenses to his former client R.M., and that he be ordered to pay the costs of this proceeding. After our independent review of the record, we adopt the referee's findings of fact and conclusions of law. We also agree that Attorney Phillips' misconduct requires that his license to practice law be suspended for a period of one year, that he make certain restitutionary payments to R.M., and that he pay the costs of this disciplinary proceeding. Although we are aware of Attorney Phillips' recent criminal conviction

for tax evasion, which has some connection with the facts underlying the present disciplinary complaint, we leave for another day the question of any additional discipline for that conduct or Attorney Phillips' conduct during this proceeding.

¶ 2. The present disciplinary proceeding was initiated by the filing of a complaint by the Office of Lawyer Regulation (OLR) on July 19, 2004. The complaint contains seven counts, stemming from two grievances, one by Attorney Phillips' former client R.M. (Counts I-VI) and one by the Wisconsin Department of Revenue (DOR) (Count VII).

¶ 3. Counts I and II allege that Attorney Phillips violated SCR 20:1.8(a)[1] because at the time of two loans by R.M. to Attorney Phillips: (1) the terms of the loans were not fair and reasonable to R.M.; (2) those terms were not transmitted in writing in a manner that R.M. could reasonably understand; (3) Attorney Phillips failed to give R.M. a reasonable opportunity to seek the advice of independent counsel; and (4) Attorney Phillips failed to obtain written consent from R.M. for the transactions. Count III alleges that Attorney Phillips

---

[1] SCR 20:1.8(a) states: Conflict of interest: prohibited transactions.

(a) A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client;

(2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and

(3) the client consents in writing thereto.

violated SCR 20:1.8(b)[2] by taking advantage of his knowledge of R.M.'s father's estate to obtain the two loans from R.M. totaling $145,000. Count IV alleges that Attorney Phillips' partial truths concerning his financial situation and his failure to disclose the full credit risk to R.M. at the time of the loans violated SCR 20:8.4(c).[3] Count V alleges that by failing to close R.M.'s father's estate in a timely fashion and to take action concerning the estate's failure to file a timely federal estate tax return, Attorney Phillips did not "act with reasonable diligence and promptness," contrary to SCR 20:1.3. Count VI alleges that Attorney Phillips failed to return R.M.'s files to him for over four months, despite repeated requests, in violation of SCR 20:1.16(d).[4]

¶ 4. With respect to the DOR grievance, Count VII alleges that Attorney Phillips' failure to file timely state income tax returns for the years 1998 through 2001 and to pay state income taxes when due violated a supreme court decision regulating the conduct of lawyers, *see, e.g., In re Disciplinary Proceedings Against*

---

[2] SCR 20:1.8(b) states that "[a] lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client consents after consultation."

[3] SCR 20:8.4(c) states that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[4] SCR 20:1.16(d) provides: Declining or terminating representation.

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

*Owens,* 172 Wis. 2d 54, 56–57, 492 N.W.2d 157 (1992), in violation of SCR 20:8.4(f).[5]

¶ 5. Attorney Phillips filed an answer that admitted many of the underlying transactions and admitted the allegation of wrongdoing in Count VII, but denied violating any other rule of professional conduct.

## I. REFEREE'S FINDINGS OF FACT

¶ 6. Attorney Stanley F. Hack was appointed referee and held a contested hearing on the matter on December 13, 2004, at which both R.M. and Attorney Phillips testified. The referee then prepared his report and recommendation, which included detailed findings of fact and conclusions of law.

¶ 7. Attorney Phillips was admitted to practice law in Wisconsin in 1981. For a substantial portion of his career, Attorney Phillips has been the sole principal in his own firm in Brookfield, Law Offices of Mark A. Phillips, S.C. Attorney Phillips has not been the subject of discipline prior to the filing of the present complaint.

¶ 8. According to the referee's factual findings, R.M. was a longtime friend and client of Attorney Phillips on both business and personal matters. In March 1997 R.M.'s father passed away. R.M., as personal representative and sole beneficiary, retained Attorney Phillips to probate his father's estate. On April 28, 1997, Attorney Phillips filed the initial papers to begin the probate of the estate. Attorney Phillips remained the attorney of record for the estate until October 12, 2000.

---

[5] SCR 20:8.4(f) states that it is professional misconduct for a lawyer to "violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers."

¶ 9. In February 1998 Attorney Phillips asked R.M. for a loan of $20,000. Attorney Phillips told R.M. that he needed the money because he had missed an estimated tax payment to the Internal Revenue Service (IRS) and that he would have the money back to R.M. quickly. On February 24, 1998, R.M. gave Attorney Phillips a check for $20,000, which Attorney Phillips immediately cashed. Other than the check, there was no written document to memorialize the loan. There was no agreement for payment of interest or any repayment schedule. Although there was some conflicting testimony on these points, the referee also specifically found that Attorney Phillips did not offer any collateral or security for the loan to R.M. and did not advise R.M. to seek independent counsel to review the loan.

¶ 10. During the OLR's investigation, Attorney Phillips produced an unsigned copy of a letter from himself to R.M. that was dated April 11, 1998. The letter purported to advise R.M. to seek the counsel of another lawyer and to offer R.M. a mortgage on two properties that Attorney Phillips owned. Based on R.M.'s testimony that he never received any such letter prior to receiving it from the OLR during its investigation, the referee found that the letter had never been sent.[6]

¶ 11. At some point after the initial $20,000 loan, Attorney Phillips asked R.M. for an additional loan of $100,000 allegedly because of problems with the IRS.

---

[6] In a malpractice action by R.M. against Attorney Phillips concerning his father's estate, which is discussed later, discovery requests asked Attorney Phillips to produce copies of all documents he sent to R.M. at any time after March 1997. Attorney Phillips did not produce the April 11, 1998, letter during the malpractice case. He claimed at the disciplinary hearing that his failure to search for and produce the letter was because he thought it was not relevant.

When R.M. responded that he did not have that amount of money available to loan, Attorney Phillips asked R.M. about the sale of R.M.'s father's house, which was part of the father's estate.

¶ 12. Ultimately, the father's house was sold and the sales proceeds of nearly $170,000 were deposited into one of R.M.'s bank accounts. Attorney Phillips again asked R.M. about an additional loan. R.M. ultimately agreed to an additional loan of $125,000. At the time of the loan, Attorney Phillips told R.M. that the loan was needed to pay IRS penalties. According to R.M.'s testimony, Attorney Phillips told R.M. that the loan would make him debt-free.[7]

¶ 13. R.M. gave Attorney Phillips a check for $125,000, and on March 23, 1999, Attorney Phillips executed a promissory note in favor of R.M. Other than the check, the note was the only written evidence of the loan. No collateral was given in exchange for the loan.

¶ 14. The note stated that Attorney Phillips promised to pay the principal amount of $145,000, the

---

[7] These statements to R.M., as found by the referee, appear to be inconsistent with Attorney Phillips' 2005 plea agreement on a federal income tax evasion charge. *See infra* ¶¶ 33–35. In that plea agreement, of which this court takes judicial notice, Attorney Phillips admitted that he did not use the $125,000 loan proceeds to pay his back taxes, but instead hid the loan proceeds in multiple cashier's checks that he subsequently converted into cash using his client trust account and a bank account held solely in his wife's name. Attorney Phillips also admitted that he ultimately used the loan proceeds primarily to pay his personal living expenses. These admissions also appear to be inconsistent with the referee's conclusion, based on Attorney Phillips' testimony at the disciplinary hearing, that Attorney Phillips could not testify as to what happened to the $145,000 in loan proceeds, other than that he paid some taxes and some bills.

amount of both loans, "payable together with interest to date of payment at the rate of seven (7%) percent per annum until fully paid." It also stated that Attorney Phillips was to make 60 payments of $845.83 per month. Thus, the note provided for interest-only payments, although the note did not state this explicitly. The note also did not specifically state when the principal was to be repaid. Although Attorney Phillips has referred to the note as a demand note, the terms of the note nowhere require repayment upon demand. According to R.M., he was unaware that the note provided for interest-only payments.

¶ 15. The referee found that R.M. was not advised to seek the counsel of another lawyer with respect to this $125,000 loan. The referee further found that Attorney Phillips did not obtain R.M.'s written consent to the transaction. Although Attorney Phillips produced to the OLR and submitted to the referee a copy of another letter, dated March 23, 1999, in which Attorney Phillips again purported to advise R.M. to obtain independent counsel and to offer collateral, the referee found that this letter, like the April 11, 1998 letter, had not been sent to R.M.

¶ 16. Attorney Phillips made 18 interest-only payments on the note. These payments were often not on time. Attorney Phillips' last payment occurred in September 2000. After Attorney Phillips defaulted on the note, R.M. sued and obtained a judgment against Attorney Phillips in the amount of $148,511.37, which was docketed in January 2001. Attorney Phillips has made no payments on the judgment.

¶ 17. R.M.'s father's estate remained open until March 2003. In August 2000 R.M. discovered that the federal estate tax return was long overdue, resulting in penalties and interest of approximately $155,000 in

addition to the tax due. R.M. retained new counsel to complete the estate and brought a malpractice action against Attorney Phillips and the accountant working with Attorney Phillips on the estate. A jury ultimately returned a verdict for $155,246 in damages in R.M.'s favor that found the accountant 55 percent negligent, Phillips 35 percent negligent, and R.M. 10 percent negligent. Because Attorney Phillips did not have malpractice insurance and because the accountant had been found more than 50 percent negligent, the accountant's insurance carrier paid Attorney Phillips' portion of the damages.

¶ 18. The jury also awarded R.M. $20,000 in punitive damages against Attorney Phillips, based on a finding that Attorney Phillips had acted maliciously toward R.M. or with an intentional disregard of R.M.'s rights. Although Attorney Phillips initially stipulated to pay the punitive damages award, he made no payments and a judgment for the punitive damages award in the amount of $28,571.35 was ultimately entered against Attorney Phillips in January 2003. Attorney Phillips has not made any payments on this judgment.

¶ 19. Based on Consolidated Court Automation Program (CCAP) records, the referee found that Attorney Phillips' financial situation was significantly more precarious than Attorney Phillips disclosed to R.M. The records indicate at least the following tax warrants filed against Attorney Phillips and/or his law office by the DOR:

1. $15,972.25 (docketed June 2, 1998)

2. $ 2,502.76 (docketed June 8, 1998)

3. $ 8,540.11 (docketed February 4, 1999)

4. $ 7,979.15 (docketed February 4, 1999)

99

5. $ 4,941.70 (docketed February 4, 1999)

6. $ 7,216.43 (docketed August 30, 1999)

7. $44,013.33 (docketed May 19, 2003)

8. $ 2,179.83 (docketed December 8, 2003)

9. $18,262.98 (docketed May 13, 1997)

¶ 20. Records also show many other liens and judgments against Attorney Phillips and the two pieces of real estate that he owns, including:

1. $ 74,000.00—first mortgage in favor of a bank recorded on August 25, 1983;

2. $ 50,000.00—second mortgage in favor of a relative recorded on November 16, 1994;

3. $ 75,000.00—third mortgage in favor of a corporation in which Attorney Phillips invested recorded on December 29, 1995;

4. $ 81,095.00—judgment in favor of Attorney Phillips' former law partner docketed on August 23, 1996;

5. $ 16,859.64—federal tax lien recorded on August 23, 1995;

6. $103,242.56—federal tax lien recorded on May 7, 1998;

7. $ 34,512.87—federal tax lien recorded on August 31, 2000;

¶ 21. The referee specifically found that had R.M. been aware of Attorney Phillips' actual debt situation, he would not have made the loans to Attorney Phillips.

¶ 22. The referee also made findings regarding Attorney Phillips' failure to return R.M.'s files. R.M. sent Attorney Phillips a letter on August 18, 2003,

seeking the return of all of his personal and business files. The letter stated that it was repeating R.M.'s prior oral requests. Although Attorney Phillips responded that he would "personally see to it that the documents are delivered to you within the next few weeks," Attorney Phillips did not return the files. R.M. sent follow-up letters on October 16 and 26, 2003. In a letter to the OLR, dated November 13, 2003, R.M. stated that despite repeated requests, he still had not received his files or been given instructions on when to pick them up from Attorney Phillips' office. After the OLR sent Attorney Phillips a letter inquiring as to the status of R.M.'s files, Attorney Phillips responded that he wanted to keep the files pending the resolution of the OLR's investigation. After the OLR reminded Attorney Phillips that failure to return a client's files upon request is a violation of SCR 20:1.16(d), Attorney Phillips returned R.M.'s files.

¶ 23. Based on information received from the DOR and as admitted by Attorney Phillips, the referee also found that Attorney Phillips did not file state income tax returns for the years 1998 through 2001, despite notifications from the DOR. In addition, although he had filed returns for 1992 through 1997, Attorney Phillips had a delinquent balance for failing to pay the taxes due for those periods. After the OLR contacted Attorney Phillips about this matter, in February 2003 Attorney Phillips finally filed returns showing tax due in each of the relevant years, but did not include any payment with the returns. Indeed, according to the DOR, Attorney Phillips' last payment to reduce his delinquency was made in December 1995. Because of Attorney Phillips' nonpayment, the DOR was forced to garnish his wife's wages beginning in August 1999.

## II. REFEREE'S CONCLUSIONS OF LAW

¶ 24. On the basis of these factual findings, the referee concluded that the OLR had proven that Attorney Phillips had engaged in violations of the Supreme Court Rules of Professional Conduct, as alleged in each of the seven counts of the OLR complaint.

¶ 25. With respect to the two loans between R.M. and Attorney Phillips, the referee concluded that Attorney Phillips had violated SCR 20:1.8(a) on both occasions because (1) the terms of the transaction were not fair and reasonable to R.M.; (2) the terms were not provided to R.M. in an understandable writing; (3) Attorney Phillips did not give R.M. a reasonable opportunity to seek the advice of independent counsel; and (4) Attorney Phillips did not obtain R.M.'s written consent to the transactions.

¶ 26. The referee further concluded that Attorney Phillips had violated SCR 20:1.8(b) because he had used his knowledge of R.M.'s finances, including his knowledge of the sale of R.M.'s father's house, to obtain loans totaling $145,000 from R.M.

¶ 27. Finally, with respect to the loans, the referee concluded that Attorney Phillips had violated SCR 20:8.4(c) by failing to make a complete disclosure to R.M. about Attorney Phillips' financial distress and the substantial risk of his nonpayment of the loans.

¶ 28. The referee also found that Attorney Phillips had not acted with reasonable diligence, in violation of SCR 20:1.3, when he had failed to close R.M.'s father's estate in a timely manner and had failed to cause the federal estate tax return to be filed until 2 1/2 years after it was due, resulting in substantial penalties and interest payments.

¶ 29. The referee concluded that Attorney Phillips had violated SCR 20:1.16(d) by improperly failing to return R.M.'s files for more than four months, despite repeated requests to do so.

¶ 30. Finally, the referee concluded that Attorney Phillips' failure to file timely state income tax returns and to pay taxes that were due had violated this court's decisions that attorneys have an ethical obligation to file timely tax returns and pay taxes that are due. *See Owens,* 172 Wis. 2d at 56–57. Consequently, the referee found that Attorney Phillips had violated SCR 20:8.4(f).

### III. REFEREE'S RECOMMENDATION

¶ 31. The referee considered various aggravating and mitigating factors of which he was aware at the time in reaching a recommendation as to the level of discipline. Aggravating factors included the substantial number of violations, the serious neglect of the probate matter, and using a personal friendship with a client to obtain loans on terms unfairly weighted in Attorney Phillips' favor without having the client obtain independent advice. On the other hand, the referee noted that the long-standing friendship between Attorney Phillips and R.M., while not excusing Attorney Phillips' conduct, may explain in part the manner in which the loans were made.

¶ 32. In light of the totality of the circumstances, the referee recommended that Attorney Phillips' license to practice law in Wisconsin should be suspended for one year. The referee also recommended that Attorney Phillips should be ordered to repay R.M. the $145,000 in loans that Attorney Phillips received, together with any costs incurred by R.M. in obtaining the judgment on the loans and any unpaid interest on the loans and the judgment up to the date of payment. The referee further recommended that Attorney Phillips should be

ordered to satisfy the $20,000 punitive judgment, together with interest on the judgment until the date of payment. Finally, the referee recommended that Attorney Phillips should be ordered to pay the costs of this disciplinary proceeding, which total $9911.79 as of December 12, 2005.

## IV. SUMMARY SUSPENSION DUE TO CRIMINAL CONVICTION

¶ 33. Before we turn to Attorney Phillips' appeal of the referee's report and recommendation, we briefly address events that have occurred since the date of the referee's report. While the briefing of the present appeal was occurring, Attorney Phillips was charged in the United States District Court with attempting to evade the payment of a large portion of his federal income tax. This charge appears related to Attorney Phillips' attempts, using in part his client trust account, to hide from the IRS the proceeds of the $125,000 loan so that it would not be subject to garnishment. Pursuant to a plea agreement, Attorney Phillips pled guilty to the tax evasion charge on July 25, 2005. Ultimately, the federal district court sentenced Attorney Phillips to five months of incarceration, 150 days of home confinement, and three years of supervised release. Attorney Phillips did not inform the court of any of these events.

¶ 34. After the OLR learned of these facts and while the present appeal remained pending, it filed a motion pursuant to SCR 22.20(1)[8] for the summary

---

[8] SCR 22.20(1) states: Summary license suspension on criminal conviction.

(1) *Summary suspension.* Upon receiving satisfactory proof that an attorney has been found guilty or convicted of a serious crime, the supreme court may summarily suspend the attorney's

suspension of Attorney Phillips' license to practice law in Wisconsin on the basis of his criminal conviction. Attorney Phillips did not respond to the OLR's motion. On January 20, 2006, this court granted the OLR's motion and summarily suspended Attorney Phillips' license to practice law in this state. On February 8, 2006, the OLR filed a new complaint against Attorney Phillips relating to the tax evasion conviction, which has been assigned Case No. 2006AP334–D.

¶ 35. Although the facts underlying the criminal conviction appear to have some connection with one of the loans at issue in this proceeding, we do not address at this time whether discipline should be imposed for that conduct. That matter will proceed according to SCR 22.20(6) and (7)[9] in Case No. 2006AP334–D, which this court will address in due course.

---

license to practice law pending final disposition of a disciplinary proceeding, whether the finding of guilt or the conviction resulted from a plea of guilty or no contest or from a verdict after trial and regardless of the pendency of an appeal.

[9] SCR 22.20(6) and (7) state: Summary license suspension on criminal conviction.

(6) *Filing of complaint.* The director, or special investigator acting under SCR 22.25, shall file the complaint in the disciplinary proceeding within 2 months of the effective date of the summary suspension or shall show cause why the summary suspension should continue. The respondent attorney may file a response with the supreme court within 10 days of service. Reinstatement under this section does not terminate any misconduct investigation or disciplinary proceeding pending against the attorney.

(7) *Filing of referee report.* The referee appointed to conduct a hearing on the complaint shall conduct the hearing promptly and file the report required by SCR 22.16 no later than 3 months after the filing of the complaint. In the event the report is not filed within 3 months of the filing of the complaint, the respondent attorney may move the supreme court for reinstatement pending completion of the disciplinary proceeding. Reinstatement under

## V. ATTORNEY PHILLIPS' APPEAL FROM THE REFEREE'S REPORT AND RECOMMENDATION

¶ 36. Turning back to Attorney Phillips' appeal from the referee's recommendation in the present proceeding, we note that the standard of review requires us to affirm the referee's findings of fact unless they are clearly erroneous. *See In re Disciplinary Proceedings Against Sosnay,* 209 Wis. 2d 241, 243, 562 N.W.2d 137 (1997). We review the referee's conclusions of law, however, on a de novo basis. *See In re Disciplinary Proceedings Against Carroll,* 2001 WI 130, ¶ 29, 248 Wis. 2d 662, 636 N.W.2d 718.

A. Violations of SCR 20:1.8(a), 20:1.8(b), and 20:8.4(c) Regarding the Client Loans

¶ 37. Attorney Phillips challenges the referee's findings of fact and conclusions of law with respect to the two loans. As admitted in his answer to the OLR complaint, Attorney Phillips acknowledges that he did not obtain R.M.'s signed consent to the loans, one of the requirements of SCR 20:1.8(a) for any transaction between a lawyer and a client. Nonetheless, he argues that the referee erroneously concluded that Attorney Phillips had violated the other two requirements of SCR 20:1.8(a).

¶ 38. First, Attorney Phillips asserts that the terms of the loan transactions were fair and reasonable to R.M. Indeed, he argues that there was really only one loan; that the initial $20,000 was always contemplated

this section does not terminate any misconduct investigation or disciplinary proceeding pending against the attorney.

merely as an advance on a much larger loan that was ultimately completed with the $125,000 check. Although he did not state so explicitly, the referee's report treats the two transfers from R.M. to Attorney Phillips as two separate loans. Attorney Phillips asserts that this court is not bound by this finding because it is simply an inference drawn by the fact finder from documentary evidence. *See State ex rel. Sieloff v. Golz,* 80 Wis. 2d 225, 241, 258 N.W.2d 700 (1977). Attorney Phillips' argument ignores the fact that the referee reached his factual findings, including the implied finding that there were two separate loans, not only on the basis of the note, but also on the basis of Attorney Phillips' and R.M.'s testimony. R.M.'s testimony spoke of two distinct loans and provided a sufficient ground to support the referee's finding.

¶ 39. Moreover, the documentary evidence supports a conclusion that the two transfers of money from R.M. to Attorney Phillips should be treated as separate transactions. The February 1998 loan of $20,000 was evidenced only by R.M.'s check. There were no terms at all to that loan. Attorney Phillips did not pay any interest on the loan (or principal either) for more than a year. Attorney Phillips did not provide R.M. with any note, gave no collateral, and specified no date of repayment.

¶ 40. The second transfer was of a substantially greater amount of money, creating a different level of risk for R.M. As the referee found, R.M. did not immediately write out a check to Attorney Phillips when he requested this second, larger amount. It took a substantial amount of time (indisputably months) before R.M. agreed to turn over the second check. Even if, as Attorney Phillips claims, the parties had an understanding that R.M. would loan a second amount to

Attorney Phillips, there was nothing definite in February 1998 that required him to do so. Writing out a second check (this one for $125,000) was a second volitional act by R.M. and should be considered as a separate transaction.

¶ 41. Moreover, whether the loan was ultimately treated as a single debt because the entire loaned amount ultimately was covered by the March 23, 1999, promissory note, does not make much legal difference as to the conclusion that Attorney Phillips violated SCR 20:1.8(a). SCR 20:1.8(a) states that a lawyer must take specified actions before entering into a business transaction with a client. Attorney Phillips tries to argue that the loan was actually one transaction that occurred in March 1999 when the second loan check was issued. It is undisputed, however, that R.M. initially lent money ($20,000) to Attorney Phillips in 1998. Even if treated as a single loan, that was the date that Attorney Phillips "entered into" a loan transaction with R.M. At least that date, regardless of the fact that the course of lending concluded more than a year later, would have to be the date for determining Attorney Phillips' compliance with SCR 20:1.8(a).

¶ 42. The referee correctly found, however, that there were two transactions and that neither transaction was fair and reasonable to R.M. Attorney Phillips challenges this characterization. With respect to the $20,000 loan, Attorney Phillips does not claim that this was fair and reasonable standing alone because he considers it an advance on the later loan. However, this was unquestionably a loan that stood on its own for more than a year. It was undocumented and provided no interest or security for R.M. As the OLR notes, "common sense dictates that a loan without terms

greatly prejudices the lender as enforceability is greatly hampered, if not diminished or even extinguished." Moreover, although Attorney Phillips argues that such terms are appropriate between friends, Attorney Phillips never offered any evidence that R.M. had expressly agreed that Attorney Phillips could have the $20,000 for over a year, interest-free, without collateral, and without any repayment. The most Attorney Phillips can allege is that R.M. never subsequently objected to his failure to pay any interest or principal for more than a year.

¶ 43. On its face, borrowing such a substantial amount of money without any provision for payment of interest or for a specified term of the loan is certainly not fair and reasonable to a lender. Attorney Phillips admitted as much during the disciplinary hearing when, in response to a question asking what advice he would give to a potential lender client facing such a loan request, he stated that it would be prudent to document the terms of the loan in writing. If a client, having been fully informed and with the opportunity to consult independent counsel, nonetheless expressly chose in writing to forego interest, one could argue that the client's express statement showed that the client considered the interest-free term to be fair and reasonable to the client. In the absence of any such written expression of R.M.'s intent here, the lack of any terms for the initial loan was not fair and reasonable to R.M.

[5]

¶ 44. Attorney Phillips also argues that the terms of the promissory note show that the loans were fair and reasonable to R.M. Attorney Phillips again claims that this court can substitute its own judgment because the referee's finding was based on documentary evidence. *See State ex rel. Sieloff,* 80 Wis. 2d at 241. Attorney Phillips argues that, on its face, a five-year

note providing for 7 percent interest and requiring only the payment of interest is fair and reasonable. Although one can imagine situations in which a lender might agree to make such an interest-only loan, the lender would compensate for having its money tied up for such a lengthy period of time by charging a higher interest rate and obtaining collateral to protect the principal. Neither was done here. In addition, Attorney Phillips' reliance on just the face of the note is misplaced because the referee also considered and credited R.M.'s testimony that he did not understand at the time of the loan that the note provided for payment of interest only. This factual finding, based on the referee's firsthand view of the testimony, will not be overturned.

■

¶ 45. Attorney Phillips also argues that basic contract law requires a party to read a contract and to take reasonable steps to protect one's own interests. *See State Farm Fire & Cas. Co. v. Home Ins. Co.,* 88 Wis. 2d 124, 129, 276 N.W.2d 349 (Ct. App. 1979). Attorney Phillips claims that the transaction cannot be deemed unfair because R.M. chose not to read the note, investigate Attorney Phillips' financial situation and ask for collateral. This is a primary theme of Attorney Phillips' argument that the transaction was fair because it was between long-standing friends.

■

¶ 46. Attorney Phillips' reliance on general contract law misses the intent of SCR 20:1.8(a). That rule is designed to make transactions between lawyer and client subject to higher standards than general contract law. It imposes these additional safeguards to protect clients precisely because they often rely on their attorney to look after their interests. Attorney Phillips' argument fails to grasp this difference.

¶ 47. Attorney Phillips' reliance on his friendship also underlies his argument that he sufficiently disclosed his financial situation to R.M. He asserts that R.M. knew he was in financial straits because it is undisputed that Attorney Phillips said he needed the money to pay back taxes. He claims that R.M. simply chose not to ask for any more financial information. Thus, he argues that whether R.M. was placed behind a long line of prior creditors in terms of priority of repayment is irrelevant.[10]

¶ 48. The referee found, however, that Attorney Phillips' financial situation was significantly more desperate than Attorney Phillips disclosed. The referee credited R.M.'s testimony that Attorney Phillips told him the second loan would make Attorney Phillips debt-free. This was an issue of fact and the referee's findings are supported by record evidence.

¶ 49. Attorney Phillips also challenges the referee's finding that he did not advise R.M. to seek independent counsel. Attorney Phillips relies on the April 11, 1998, and March 23, 1999, letters as proof that

---

[10] Attorney Phillips also argues that his financial situation was really not so bad. His brief to this court states, "Phillips' finances, while not sparkling, were not in such disarray that [R.M.'s] loan could even be considered a high risk venture. Had Phillips been unable to borrow the $145,000.00 principle [sic] amount from a lending institution after the five (5) year term of the note, the sale of his *two (2)* parcels of real estate contained sufficient equity to repay [R.M.] *in full*." This again appears to be inconsistent with the federal plea agreement, in which Attorney Phillips admitted that he could not even use the loan proceeds to pay his outstanding back taxes, but had to use the borrowed money to pay his personal living expenses.

111

he did tell R.M. to have another attorney review the loans. He argues that the referee stated his factual finding in terms of the letters not being sent. Attorney Phillips therefore claims that the referee did not find that the letters were after-the-fact fabrications by Attorney Phillips. Because the letters purport to confirm Attorney Phillips' statements to R.M. that he should consult another attorney, Attorney Phillips claims that the referee should have concluded that Attorney Phillips gave R.M. a reasonable opportunity for independent counsel pursuant to SCR 20:1.8(a). He argues that even if the letters were not sent, they prove that Attorney Phillips did make the necessary oral statements to R.M.

¶ 50. We agree with the OLR's response that this was an area of disputed fact resolved by the referee against Attorney Phillips. The referee's findings are not clearly erroneous. R.M. testified that he knew nothing about the letters until he received them from the OLR during its investigation years later. In addition, Attorney Phillips never produced these letters during R.M.'s malpractice action against Attorney Phillips. Also, Attorney Phillips testified during the malpractice trial that he could not specifically remember telling R.M. to seek independent advice. Finally, even if the referee had found the letters had been sent, the first letter would have been sent 46 days *after* the original $20,000 loan had been made.

B. Violation of SCR 20:1.3 Regarding Closing of Estate

¶ 51. Next, Attorney Phillips argues that the referee erroneously charged him with the responsibility for filing an estate tax return. He argues that this was to be the responsibility of the accountant.

112

¶ 52. Attorney Phillips also argues that the evidence shows that the delay in closing the estate was due to R.M.'s failure to provide Attorney Phillips with complete and accurate information regarding R.M.'s father's assets, rather than due to Attorney Phillips' delay in acting after he had received the information. As support for his claim, Attorney Phillips points out that R.M. had been handling his father's financial affairs for more than 3¹/₂ years prior to his father's death. The initial inventory, prepared by Attorney Phillips based on information R.M. provided, showed assets of $595,080.21, just under the $600,000 limit at the time for imposing estate taxes. Attorney Phillips argues that R.M. initially hid assets from Attorney Phillips in the hope of avoiding estate taxes. Attorney Phillips claims that R.M. consciously delayed providing information to Attorney Phillips, trickling the information in little by little over the next 2¹/₂ years. Ultimately, when Attorney Phillips was in possession of all of the information, he prepared a final inventory that listed over $1.1 million in assets. Attorney Phillips cites statutes and cases that describe a personal representative's duties as including the marshalling of assets and overseeing the actions of the professionals (lawyers and accountants) the representative hires. Attorney Phillips argues that it is undisputed that R.M. never complained during the probate process because he recognized that he was the sole heir and the delay was due to his own foot-dragging. Attorney Phillips points to 11 notices that R.M. received from the probate court concerning the probate process.

¶ 53. Attorney Phillips also points out that R.M. failed to file any complaint with the OLR until three years after the estate was filed. Although he does not claim that the OLR is barred by a form of laches, he does argue that this delay prejudiced his defense and should

be a mitigating factor for the referee, resulting in more deference being given to the lawyer's recollection of events.

¶ 54. Even if R.M. may have been partially responsible for some of the delay, Attorney Phillips' claims do not undercut the referee's conclusion that Attorney Phillips did not act with reasonable diligence. First, Attorney Phillips states that the referee found that R.M. gave Attorney Phillips all of the necessary financial information in the summer and fall of 1997, but that Attorney Phillips simply sat on the information without taking action for nearly three years. This is not an accurate characterization of the referee's findings.

¶ 55. The referee did not specifically find that it was Attorney Phillips' responsibility to file the estate tax returns personally.[11] Rather, the referee found that, given the November 1997 initial inventory showing assets approaching the $600,000 limit and the knowledge that there was at least one other annuity not included on the inventory that was producing a monthly payment in the thousands of dollars, Attorney Phillips had enough information that he "should have advised the client and his accountant of the likely need to file a Federal Estate Tax Return." Because it appears that Attorney Phillips did not say anything to R.M. or the accountant about the need to file an estate tax return and because he did not take reasonable steps to move the estate toward closing, the referee concluded that Attorney Phillips violated SCR 20:1.3.

---

[11] R.M. admitted in his testimony at the disciplinary hearing that he retained the accountant to handle the filing of all of the tax returns related to his father and the estate.

¶ 56. The referee's factual findings and legal conclusion are supported by the hearing transcript. As the referee pointed out at the hearing, Attorney Phillips knew, based on the initial inventory, that the estate was at least $595,000, only $5000 under the triggering amount at the time for an estate tax return. A memorandum by Attorney Phillips' paralegal also informed Attorney Phillips that there was at least one other annuity not listed on the inventory. Even if it had been the accountant's responsibility to prepare and file the return, as R.M. admitted, Attorney Phillips should at least have warned R.M. and the accountant of the need to file a return and that they should be working on the return. Instead, the filing of the return slipped through the cracks until August 2000 when the client learned of more than $155,000 in penalties and interest caused by the late filing of the return. Moreover, in the malpractice case, a jury found Attorney Phillips 35 percent negligent in the failure to file the return. Thus, the referee's finding that Attorney Phillips did not act with reasonable diligence is amply supported by the record.

C. Violation of SCR 20:1.16(d)

¶ 57. Attorney Phillips does not dispute the facts as found by the referee regarding the timing of his return of R.M.'s files. Indeed, in the conclusion to his appeal brief, he now admits that he violated SCR 20:1.16(d) by failing to return R.M.'s files for the two months after R.M.'s second written request in October 2003.

¶ 58. Attorney Phillips' argument on this point seems addressed solely to the severity of discipline. Attorney Phillips argues that already during the mal-

practice lawsuit in 2000, Attorney Phillips told R.M.'s counsel that they could pick up all of R.M.'s files. R.M. waited three years until 2003 to request his files. Attorney Phillips points to his letter of August 19, 2003, in which he promised to return all of R.M.'s files within the next few weeks and told R.M. to contact him if that was not acceptable. Attorney Phillips emphasizes that these were all closed files and that R.M. did not respond for two months. By the time R.M. responded, Attorney Phillips claimed that he needed the files to review in response to the OLR's investigation. Attorney Phillips points out that when the OLR told him that his retention of the files violated SCR 20:1.16(d), he returned the files to R.M. the very next day. Thus, Attorney Phillips argues that his violation was not substantial and that R.M. was not harmed by the delay in any way.

¶ 59. The record again supports the referee's factual findings. R.M. requested the files in August 2003. Although Attorney Phillips promised to return the files within a few weeks, it does not appear that he took any action to do so until R.M. made another demand. There does not appear to be any reason to upset the referee's findings or conclusion on this count.

D. Violation of SCR 20:8.4(f) Regarding Tax Returns

¶ 60. Again, Attorney Phillips does not expressly challenge the referee's factual finding or his legal conclusion that Attorney Phillips violated SCR 20:8.4(f) when he failed to file timely tax returns. He merely points out that he told the referee that he has paid all of the original back taxes, leaving only the penalties and

interest outstanding. He also notes that his and his wife's accounts and earnings have been garnished for the last four years.

¶ 61. First, Attorney Phillips provides no record citation for his claim that he has repaid the original back taxes. Moreover, even if true, that fact does not change the referee's findings, which were admitted by Attorney Phillips.

E. Level of Discipline

¶ 62. Attorney Phillips argues that the referee's recommended level of discipline is excessive. He emphasizes that he has practiced law in the Milwaukee area for over 24 years and competently represented hundreds of clients during that time. He also points out that even R.M. did not say anything derogatory about Attorney Phillips' handling of the many other matters he undertook for R.M.'s business and personal interests.

¶ 63. Attorney Phillips correctly notes that a primary concern in disciplinary proceedings is protecting the public from attorneys that are unfit to practice law. He argues that his lengthy career and lack of prior discipline indicate this conduct will not recur. Attorney Phillips requests that the court impose only a 60–day suspension.

¶ 64. In support of his argument for a shorter suspension, Attorney Phillips points to a number of prior disciplinary cases in which less severe discipline was imposed than is currently recommended by the referee. The primary case he relies on is *In re Disciplinary Proceedings Against Gilbert*, 2004 WI 144, 276 Wis.

2d 395, 689 N.W.2d 50.[12] In that case, Attorney Gilbert represented a husband and wife in some real estate matters. He requested and obtained from the couple a loan in the amount of $10,500. The loan was documented only by a promissory note. Attorney Gilbert did not obtain any written consent from the clients, did not offer any collateral, and did not give the clients an opportunity to seek the advice of independent counsel. When Attorney Gilbert defaulted on the note, the clients obtained a money judgment, which Attorney Gilbert did not satisfy. The referee also found that Attorney Gilbert failed to forward the clients' files to their new attorney and failed to respond to the OLR's grievance inquiries. For this conduct, the court imposed a six-month suspension.

¶ 65. Attorney Phillips asserts that he should receive even less discipline than Attorney Gilbert. He claims again that he did advise R.M. to obtain independent counsel and did offer collateral.

¶ 66. Attorney Phillips' arguments are contradicted by the referee's factual findings, which we have found to be supported by the record. Moreover, in the present case, Attorney Phillips obtained not just one, but two loans from a client. The first loan was completely undocumented. Even the subsequent note was unfairly one-sided in Attorney Phillips' favor, not requiring any repayment of principal, although not informing the client of that fact. In addition, the amount of money that Attorney Phillips borrowed from R.M. is $145,000, compared to the $10,500 Attorney Gilbert borrowed from his clients. Finally, unlike the facts in

---

[12] Attorney Phillips cites several other cases, but those cases involve facts that are dissimilar from the present case. We have considered them, but do not believe it necessary to add to the length of this opinion by distinguishing them individually.

*Gilbert,* in the present case Attorney Phillips consistently ignored his obligation to file tax returns and pay income taxes. As the OLR points out, we have imposed a 60–day suspension merely for the failure to file tax returns. *See Owens,* 172 Wis. 2d 54.

¶ 67. In summary, in view of the referee's findings of fact and conclusions of law, which we approve and adopt, we conclude that the seriousness of Attorney Phillips' professional misconduct in the present case requires that his license to practice law in Wisconsin be suspended for one year. In addition, we agree that Attorney Phillips should be required to pay to R.M. the January 2001 judgment in the original amount of $148,511.37, plus interest to the date of payment. We also conclude that Attorney Phillips should be required to satisfy the January 2003 punitive damage judgment in the original amount of $28,571.35, plus interest to the date of payment. Finally, we determine that Attorney Phillips must pay the costs of this disciplinary proceeding, which were $9911.79 as of December 12, 2005.

¶ 68. IT IS ORDERED that the license of Attorney Mark A. Phillips to practice law in Wisconsin is suspended for a period of one year, effective the date of this order.

¶ 69. IT IS FURTHER ORDERED that within 30 days of the date of this order, Attorney Phillips shall pay restitution to R.M. by satisfying the January 2001 judgment in the original amount of $148,511.37 plus interest to the date of payment, and by satisfying the January 2003 judgment in the original amount of $28,571.35 plus interest to the date of payment. If restitution to R.M. is not paid within the time specified and absent a showing to this court of his inability to pay the restitution amounts within that time, the license of

Attorney Phillips to practice law in Wisconsin shall remain suspended until further order of this court.

¶ 70. IT IS FURTHER ORDERED that within 60 days of the date of this order, Attorney Phillips shall pay to the Office of Lawyer Regulation the costs of this proceeding. If the costs are not paid within the time specified and absent a showing to this court of his inability to pay those costs within that time, the license of Attorney Phillips to practice law in Wisconsin shall remain suspended until further order of this court.

¶ 71. IT IS FURTHER ORDERED that if he has not already done so, Attorney Phillips shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.