# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2014AP804-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Pamela J. Smoler, f/k/a Pamela J. Smelzer, Attorney at Law:<br><br>Office of Lawyer Regulation,<br>      Complainant,<br>    v.<br>Pamela J. Smoler f/k/a Pamela J. Smelzer,<br>      Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST SMOLER

| | |
|---|---|
| OPINION FILED: | October 30, 2015 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | |
|   COUNTY: | |
|   JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | |
|   NOT PARTICIPATING: | |

ATTORNEYS:

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.   2014AP804-D

STATE OF WISCONSIN            :        IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Pamela J. Smoler, f/k/a Pamela J. Smelzer, Attorney at Law:**

**Office of Lawyer Regulation,**

      **Complainant,**

  **v.**

**Pamela J. Smoler f/k/a Pamela J. Smelzer,**

      **Respondent.**

**FILED**

**OCT 30, 2015**

Diane M. Fremgen
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1   PER CURIAM.   We review the report and recommendation of Referee Lisa C. Goldman that the license of Attorney Pamela J. Smoler, formerly known as Pamela J. Smelzer, be suspended for a period of nine months for professional misconduct and that she pay the full costs of this proceeding, which are $2,869.61 as of March 18, 2015.   The referee also recommended that Attorney Smoler be required to make restitution of $45,059.35 to one client.

¶2 Attorney Smoler failed to file an answer to the OLR's complaint, and she failed to appear or participate in the proceedings in any way. Accordingly, we find it appropriate to declare her to be in default. Upon careful review of the matter, we agree with the referee that Attorney Smoler's professional misconduct warrants a nine-month license suspension. We further agree that she should be ordered to pay the full costs of this proceeding. We also agree with the referee that a restitution award in the amount of $45,059.35 is appropriate. Although the Office of Lawyer Regulation (OLR) has informed the court that there is no reasonably ascertainable amount for which a restitution award would be appropriate, the referee made findings of fact supporting a restitution award. There is no indication that those findings of fact are clearly erroneous.

¶3 Attorney Smoler was admitted to practice law in Wisconsin in 1988. She currently resides in Florida. Her license to practice law in Wisconsin was temporarily suspended on July 11, 2011, as a result of her willful failure to cooperate in an OLR investigation concerning her conduct.[1] Attorney Smoler's law license is also administratively suspended for failure to pay State Bar dues, failure to comply with continuing legal education requirements, and failure to file a

---

[1] The OLR investigation at issue concerns the first client matter detailed in the complaint filed by the OLR in this case.

2

trust account certification. Attorney Smoler has no prior disciplinary history in Wisconsin.

¶4 On April 11, 2014, the OLR filed a complaint alleging that Attorney Smoler had engaged in seven counts of misconduct involving two client matters. As noted, Attorney Smoler failed to file an answer to the complaint and failed to participate in the matter in any way. On October 23, 2014, the OLR filed a motion for default judgment. The referee's report and recommendation was filed on February 27, 2015.

¶5 The first client matter detailed in the OLR's complaint involved Attorney Smoler's representation of D.S. and K.S. (collectively, the S.s). The S.s hired Attorney Smoler to represent them in a medical malpractice claim for injuries K.S. suffered following surgery and treatment at the University of Wisconsin (UW) Hospital and Clinics. Attorney Smoler filed a lawsuit on the S.s' behalf in October 2001, and in late 2003, a jury returned a verdict in their favor.

¶6 In 2005, Attorney Smoler asked the S.s if they would loan her $50,000 so that she could pursue a medical malpractice lawsuit on behalf of another client, C.J., that would be brought against one of the same doctors involved in the S.s' case. The S.s agreed to loan the $50,000 to Attorney Smoler. To memorialize the loan, Attorney Smoler drafted a document entitled "Loan/Promissory Note" which set forth the terms of the loan. The loan called for five and one-half percent interest annually or statutory interest as awarded by the court. The loan was for two years. Attorney Smoler did not put any

3

language in the note providing the S.s with an opportunity to speak with alternate counsel about the loan. The loan was signed by the parties on August 31, 2005. Attorney Smoler was paid $50,000 on September 13, 2005. She deposited the money into her business checking account.

¶7 Two years passed without Attorney Smoler making a payment to the S.s on the loan. The S.s agreed to extend the terms of the note one more year at Attorney Smoler's request. By October 2009, no payments had been made on the loan. The S.s hired an attorney who demanded payment. Attorney Smoler failed to pay the loan in response to a demand letter from the S.s' counsel.

¶8 The S.s filed a grievance with the OLR. Attorney Smoler apologized for her inability to repay the loan, saying that her representation of the plaintiffs on a contingent fee basis had resulted in financial disaster for both her clients and herself.

¶9 On October 29, 2010, Attorney Smoler filed a voluntary petition for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Western District of Wisconsin. She listed the S.s as creditors. Attorney Smoler was granted a bankruptcy discharge on March 28, 2012. The discharge included the debt she owed to the S.s.

¶10 As part of its investigation into the S.s' grievance, the OLR wrote to Attorney Smoler on December 15, 2010, and requested that she provide copies of her state and federal income tax returns for the years 2005 through 2009. Attorney

4

Smoler failed to respond. On April 1, 2011, the OLR filed a notice of motion and motion requesting an order to show cause why Attorney Smoler's license should not be suspended for her willful failure to cooperate with the OLR's investigation of the S.s' grievance. Attorney Smoler's license was temporarily suspended on July 11, 2011.

¶11 The OLR's complaint alleged the following counts of misconduct with respect to Attorney Smoler's representation of the S.s:

> [Count One] By entering into the Loan transaction with the [S.s] without providing the [S.s] a reasonable opportunity to seek the advice of counsel in the transaction and without the [S.s] consenting in writing to the Loan, Smoler violated former [Supreme Court Rule (SCR)] 20:1.8(a),[2] effective prior to July 1, 2007.

---

[2] Former SCR 20:1.8(a) (in effect prior to July 1, 2007) provides:

> A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

> (1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client;

> (2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and

> (3) the client consents in writing thereto.

[Count Two] By failing to fully cooperate in OLR's investigation in the [S.] grievance matter, Smoler violated SCR 22.03(6).[3]

¶12 The other client matter detailed in the OLR's complaint involved Attorney Smoler's representation of C.J. and her sister, C.H. During the spring of 2005, C.J. and C.H. contacted Attorney Smoler regarding potential representation of C.J. in a medical malpractice claim against UW Hospital and Clinics. Attorney Smoler requested an upfront fee concerning the initial risks of the suit, including to determine whether a notice of claim was timely filed and to find an expert witness willing to testify. Attorney Smoler asked for $50,000, to be paid over six months. She indicated that the money would be placed into her trust account. The fee agreement provided that the client would be billed a flat fee of $50,000, which would cover, in part, attorneys fees and costs, to be paid in the following manner: $10,000 prior to the start of the investigation, and the remainder $40,000 no later than December 15, 2005. C.J.'s father paid the $50,000 fee in two installments. Both checks were deposited into Attorney Smoler's business account rather than her trust account.

¶13 On October 25, 2005, C.J. gave her sister, C.H., power of attorney to act as her guardian and the authority to

---

[3] SCR 22.03(6) provides that "[i]n the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance."

negotiate, manage, and make decisions related to the claims of C.J. against UW Hospital and Clinics and the treating physician. In January 2006, C.H. requested an update on the case from Attorney Smoler. She again requested an update during a February 9, 2006 telephone conversation.

¶14 On March 2, 2006, Attorney Smoler sent an invoice indicating that $4,940.65 had been spent in time and expenses. She failed to provide any other invoices regarding the case. Attorney Smoler filed a medical malpractice action on behalf of C.J. on March 8, 2007, in Dane County Circuit Court. In early September 2007, C.H. tried to communicate with Attorney Smoler about the case. Attorney Smoler updated C.H. by email and included a copy of an amended complaint.

¶15 In September 2008, the case was dismissed on summary judgment against all defendants except one physician, who was ordered to pay $226.34. The decision was later corrected and that doctor was also dismissed on summary judgment. Attorney Smoler apparently did not immediately notify C.H. about the dismissal of her sister's lawsuit. The trial court's decision was appealed, and the court of appeals affirmed the dismissal. Attorney Smoler failed to provide copies of filed documents when requested to do so. She also failed to produce any statement of expenses or time billed on the file after the first and only bill was produced. She failed to refund any of the $50,000 that C.J.'s family had paid as an advanced fee toward expenses and hourly billing.

7

¶16 C.J. filed a grievance with the OLR, and Attorney Smoler was asked to respond but failed to do so.

¶17 The OLR's complaint set forth the following counts with respect to Attorney Smoler's representation of C.J. and C.H.:

> [Count Three] By failing to provide copies of relevant documentation to [C.J.] or [C.H.], and by failing to respond to various requests for information received from [C.J.] or [C.H.] concerning the status of her case, Smoler violated [former] SCR 20:1.4(a),[4] effective prior to July 1, 2007, and current SCR 20:1.4(a)(3) and (4).[5]

> [Count Four] By failing to respond to [C.J.'s] or [C.H.'s] requests for information concerning fees and expenses and by failing to provide periodic written statements or accountings concerning fees and expenses to [C.J.] or [C.H.], Smoler violated SCR 20:1.5(b)(3),[6] [former] SCR 20:1.15(d)(1),[7]

---

[4] Former SCR 20:1.4(a) (in effect prior to July 1, 2007) provides that "[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

[5] SCR 20:1.4(a)(3) and (4) provide that a lawyer shall "keep the client reasonably informed about the status of the matter" and "promptly comply with reasonable requests by the client for information."

[6] SCR 20:1.5(b)(3) provides that "[a] lawyer shall promptly respond to a client's request for information concerning fees and expenses."

[7] Former SCR 20:1.15(d)(1) (in effect prior to July 1, 2007) provides:

> Upon receiving funds or other property in which a client has an interest, or in which the lawyer has received notice that a 3rd party has an interest identified by a lien, court order, judgment, or contract, the lawyer shall promptly notify the client

(continued)

8

effective prior to July 1, 2007, and SCR 20:1.15(d)(2).[8]

[Count Five]  By failing upon termination of representation, to surrender papers and property to which [C.J.] was entitled and by failing to refund any advanced payment of fee or expense that had not been earned or incurred, Smoler violated SCR 20:1.16(d).[9]

[Count Six]  By failing to deposit a portion of the $50,000 received for [C.J.'s] malpractice claim to cover costs associated with the representation into a client trust account, Smoler violated [former] SCR 20:1.15(b)(4),[10] effective prior to July 1, 2007.

---

or 3rd party in writing.  Except as stated in this rule or otherwise permitted by law or by agreement with the client, the lawyer shall promptly deliver to the client or 3rd party any funds or other property that the client or 3rd party is entitled to receive.

[8] SCR 20:1.15(d)(2) provides that "[u]pon final distribution of any trust property or upon request by the client or a 3rd party having an ownership interest in the property, the lawyer shall promptly render a full written accounting regarding the property."

[9] SCR 20:1.16(d) provides:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

[10] Former SCR 20:1.15(b)(4) (in effect prior to July 1, 2007) provides, "Unearned fees and advanced payments of fees shall be held in trust until earned by the lawyer, and withdrawn pursuant to SCR 20:1.15 (g).  Funds advanced by a client or 3rd party for payment of costs shall be held in trust until the costs are incurred."

[Count Seven] By failing to respond to OLR's requests for a written response to the investigation, Smoler violated SCR 22.03(2).[11]

¶18 Referee Goldman was appointed on July 28, 2014. In her report and recommendation, the referee concluded that the OLR proved all seven counts in its complaint by clear and convincing evidence. In discussing the appropriate sanction, the referee noted that Attorney Smoler apparently practiced at a very competent and accomplished level for many years. The referee said, "No facts of record explain her sad story. It is as though she imploded all at once, without warning, and without reason." The referee went on to comment, "For an attorney with an otherwise unblemished record, Smoler's slide into the dark side seems incredibly unfortunate. . . . . Smoler's failure in general to supply information to OLR in the course of the investigation into both client matters does not help the situation and only further indicates her inability to function at a very basic level."

---

[11] SCR 22.03(2) provides:

Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail a request for a written response. The director may allow additional time to respond. Following receipt of the response, the director may conduct further investigation and may compel the respondent to answer questions, furnish documents, and present any information deemed relevant to the investigation.

¶19 The referee concluded that Attorney Smoler's combination of multiple violations involving a failure to return client money and her unwillingness to participate in the investigation into her misconduct warranted a suspension longer than six months. The referee concluded that a nine-month suspension would impress upon Attorney Smoler the seriousness of her misconduct and would deter other attorneys from committing similar misconduct. The referee further recommended that Attorney Smoler be required to pay the full costs of the proceeding.

¶20 With respect to restitution, the referee noted that the S.s' loan was discharged by the Western District of Wisconsin bankruptcy court, so no restitution would be appropriate regarding the loan that the S.s made to Attorney Smoler. With respect to the $50,000 paid to Attorney Smoler by C.J.'s family, the referee said that requiring Attorney Smoler to pay restitution would further safeguard the public and would further impress upon Attorney Smoler the seriousness of her misconduct. The referee noted that Attorney Smoler failed to account for any of the funds paid by C.J.'s family except the $4,940.65 indicated in the March 2, 2006 invoice. Accordingly, the referee recommended that Attorney Smoler be required to pay $45,059.35 in restitution to C.J. The referee said it was unclear whether the OLR intended to seek restitution for C.J. and the referee said that the OLR should be afforded discretion to reduce the amount of restitution based on information it may have.

¶21 On March 18, 2015, the OLR submitted a restitution statement saying it was not seeking restitution in either the S. matter or the C.J. matter. With respect to the S. matter, the OLR noted that the S.s' loan to Attorney Smoler was fully discharged by a bankruptcy court. With respect to the C.J. matter, the OLR said its director determined that there was no reasonably ascertainable amount for which a restitution award would be appropriate.

¶22 A referee's findings of fact are affirmed unless clearly erroneous. See In re Disciplinary Proceedings Against Eisenberg, 2004 WI 14, ¶5, 269 Wis. 2d 43, 675 N.W.2d 747. We review the referee's conclusions of law de novo. Id. We determine the appropriate level of discipline independent of the referee's recommendation. See In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶23 We conclude that Attorney Smoler should be declared in default. Although she was personally served with the complaint and was given notice of all other proceedings, she failed to appear or present a defense. Accordingly, we deem it appropriate to declare her in default.

¶24 We agree with the referee that the allegations in the OLR's complaint have been established and that Attorney Smoler engaged in the seven counts of misconduct alleged in the complaint. We further agree with the referee that a nine-month suspension of Attorney Smoler's license to practice law is an appropriate sanction for her misconduct. Although no two fact situations are identical, a nine-month suspension is generally

12

consistent with the sanctions imposed in somewhat analogous cases. For example, in In re Disciplinary Proceedings Against Pitts, 2007 WI 112, 304 Wis. 2d 556, 735 N.W.2d 917, an attorney's license was suspended for six months for ten counts of misconduct including entering into a business transaction with a client without giving her a reasonable opportunity to seek the advice of independent counsel, reducing the loan to writing, or obtaining the client's written consent to the loan. The attorney in Pitts loaned $1,000 to his client. By contrast, Attorney Smoler borrowed large sums of money from her clients. In In re Disciplinary Proceedings Against Phillips, 2006 WI 43, 290 Wis. 2d 87, 713 N.W.2d 629, an attorney's license was suspended for one year for seven counts of misconduct including borrowing $145,000 from a client without giving the client a reasonable opportunity to seek the advice of independent counsel, failing to provide the terms of the loan to the client in an understandable writing, and failing to obtain the client's written consent to the transaction. The conduct at issue in the instant case seems to fall somewhere between the Pitts and Phillips cases. Accordingly, we find it appropriate to suspend Attorney Smoler's license for nine months.

¶25 We also agree with the referee that Attorney Smoler should be required to pay the full costs of the proceeding. With respect to restitution, we agree with the referee that Attorney Smoler should be required to pay $45,059.35 to C.J. Although the OLR said that there was not presently a reasonably ascertainable amount of restitution owed to C.J., the referee

13

made explicit factual findings showing that Attorney Smoler owes C.J. $45,059.35. Those findings of fact have not been shown to be clearly erroneous and, accordingly, we adopt them. Since Attorney Smoler's debt to the S.s was discharged in bankruptcy, we make no restitution award in that matter.

¶26 IT IS ORDERED that the license of Pamela J. Smoler to practice law in Wisconsin is suspended for a period of nine months, effective the date of this order.

¶27 IT IS FURTHER ORDERED that within 60 days of the date of this order, Pamela J. Smoler shall pay restitution to C.J. in the amount of $45,059.35.

¶28 IT IS FURTHER ORDERED that within 60 days of the date of this order, Pamela J. Smoler shall pay to the Office of Lawyer Regulation the costs of this proceeding, which are $2,869.61.

¶29 IT IS FURTHER ORDERED that the restitution specified above is to be completed prior to paying costs to the Office of Lawyer Regulation.

¶30 IT IS FURTHER ORDERED that, to the extent she has not already done so, Pamela J. Smoler shall comply with the provisions of SCR 22.26 concerning the duties of an attorney whose license to practice law has been suspended.

¶31 IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement. See SCR 22.29(4)(c).

¶32 IT IS FURTHER ORDERED that the temporary suspension of Pamela J. Smoler's license to practice law in Wisconsin issued on July 11, 2011, is hereby lifted.

All work on this opinion was completed prior to Justice Rebecca G. Bradley joining the court.