IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST Lawrence F. PITTS, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant,

v.

Lawrence F. PITTS, Respondent.

Supreme Court

*No. 2005AP2925–D. Decided July 27, 2007.*

2007 WI 112

(Also reported in 735 N.W.2d 917.)

¶ 1. PER CURIAM. We review the referee's recommendation that the license of Attorney Lawrence F. Pitts to practice law in this state be suspended for a period of six months due to his professional misconduct.

¶ 2. Prior to addressing the merits of this disciplinary proceeding, we consider a procedural issue regarding the effect, if any, of a medical incapacity stipulation signed by only Attorney Pitts and sent to

the Office of Lawyer Regulation (OLR) only after the issuance of the referee's report and recommendation.

¶ 3. The OLR filed a ten-count complaint against Attorney Pitts in November 2005. According to the record of the proceedings before the referee, the OLR filed two motions for default due to Attorney Pitts' failure to file an answer to the complaint. Although the time for filing an answer had expired, the referee twice issued orders to Attorney Pitts directing him to file an answer. After the second such order, Attorney Pitts did fax an unsigned copy of an answer to the attorney for the OLR. Attorney Pitts, however, never signed the answer and never filed it with the clerk of this court or the referee. Thus, no valid answer was ever filed.

¶ 4. The referee did not rule on the default motions apparently due to ongoing discussions between the OLR and Attorney Pitts about the possible filing of a petition for consensual revocation pursuant to SCR 22.19(1) and (2)[1] or a medical incapacity stipulation pursuant to SCR 22.16(4).[2] Indeed, although the counsel for the OLR sent a proposed medical incapacity

---

[1] SCR 22.19(1) and (2) provides: Petition for consensual license revocation.

> (1) An attorney who is the subject of an investigation for possible misconduct or the respondent in a proceeding may file with the supreme court a petition for the revocation by consent or [sic] his or her license to practice law.

> (2) The petition shall state that the petitioner cannot successfully defend against the allegations of misconduct.

[2] SCR 22.16(4) provides: Proceedings before a referee.

> (4)(a) If in the course of the proceeding the respondent claims to have a medical incapacity that makes the defense of the proceeding impossible, the referee shall conduct a hearing and make findings concerning whether a medical incapacity makes

stipulation to Attorney Pitts in both November and December 2006, Attorney Pitts did not return a signed copy to the OLR.

¶ 5. Since no stipulation had been received by the OLR or filed with the referee, the OLR once again renewed its motion for the entry of a default against Attorney Pitts. On February 5, 2007, the referee, Attorney Norman C. Anderson, granted the motion and entered findings of fact and conclusions of law based on the allegations of the complaint. The referee recommended that the license of Attorney Pitts to practice law in this state be suspended for a period of six months. The referee also recommended that as a condition of the reinstatement of his license, Attorney Pitts be required to create an office management and business plan establishing a daily calendar, appropriate

defense of the proceeding impossible. The referee may order the examination of the respondent by qualified medical or psychological experts.

(b) All papers, files, transcripts, communications, and proceedings on the issue of medical incapacity shall be confidential and shall remain confidential until the supreme court has issued an order suspending the attorney's license to practice law, or has otherwise authorized disclosure.

(c) If the referee finds no medical incapacity that would make the defense of the proceeding impossible, the referee shall proceed with the misconduct action.

(d) If the referee finds that a medical incapacity makes the defense of the proceeding impossible, the referee shall file a report promptly with the supreme court. If the court disapproves the referee's finding, the court shall direct the referee to proceed with the misconduct action. If the court approves the referee's finding, the court shall abate the misconduct proceeding and suspend the respondent's license to practice law for medical incapacity until the court orders reinstatement of the attorney's license under SCR 22.36. Upon reinstatement, the court shall direct the referee to proceed with the misconduct action.

■■■■■■■■■■■■■■■■

trust account records, and an appropriate billing and filing system. The referee further recommended that Attorney Pitts be required to submit copies of his client trust account records to the OLR on a quarterly basis for a period of two years if his license is reinstated. Finally, the referee recommended that Attorney Pitts be required to pay the full costs of this disciplinary proceeding.

¶ 6. No appeal of the referee's report and recommendation was filed. On May 7, 2007, Attorney Pitts filed a letter with the clerk of this court. According to the letter, Attorney Pitts had been traveling a great deal in his motor home and had only recently received some of his mail. He claimed that he had not seen the referee's report and recommendation, although his reference to it acknowledged that he knew of its existence. Attorney Pitts' letter claimed that the only way he could be reached was to call his cell phone. The letter gave no new address to which filings should be mailed. The letter also claimed that while he had been in Madison earlier in 2007, Attorney Pitts had given a copy of the medical incapacity stipulation to a friend to mail to the OLR, although the OLR is also located in Madison. The letter indicated that Attorney Pitts was now heading back out on the road "full time" with an expectation that at some point he would end up in Alaska.

¶ 7. On May 8, 2007, the OLR filed a letter attaching a copy of an SCR 22.16(4) medical incapacity stipulation that had been signed by Attorney Pitts. The letter indicated that although a proposed stipulation had been sent to Attorney Pitts in 2006 and although Attorney Pitts had promised on January 10, 2007, to return a signed stipulation to the OLR by the following Monday, the OLR did not receive the stipulation until May 2, 2007, nearly three months after the referee

found Attorney Pitts to be in default and filed his report and recommendation. Although the OLR provided the stipulation signed by Attorney Pitts to the court for its consideration, the OLR did not sign the stipulation and requested that the court disregard it as untimely.

¶ 8. We are thus faced with the question whether to proceed with the review of the referee's report and recommendation for the imposition of discipline or to accept an SCR 22.16(4) stipulation that has not been executed by the OLR and was not returned to the OLR until well after the filing of the referee's report. We determine that the stipulation is untimely and therefore will not be considered by this court.[3]

¶ 9. Although the stipulation attached to the OLR's May 8, 2007 letter indicates that Attorney Pitts has been suffering from health problems for a number of years and contains a reference to a doctor's opinion that Attorney Pitts' condition renders him unable to practice law safely at this point in time, we cannot excuse his continued delay in this proceeding. According to his letter filed May 7, Attorney Pitts had the necessary ability to drive his motor home from New Mexico to Wisconsin earlier this year and planned to drive it from Wisconsin to Alaska. He was even in Madison for a period of time earlier in the year. It is therefore clear from his letter that he was not incapacitated such that he could not file documents with the

_____

[3] It should be noted that under SCR 22.16(4)(d), even if the court accepts a medical incapacity stipulation, the pending disciplinary proceeding is only abated, but not dismissed while the attorney's license is suspended during the incapacity. If the attorney subsequently seeks and is granted reinstatement, the disciplinary proceeding against the attorney is also reinstated. Thus, in any event, Attorney Pitts would have to face discipline for any professional misconduct in which he engaged.

referee or this court. He had the ability to file a motion requesting an extension of time if necessary. Nonetheless, he failed to ensure that the stipulation was received by the OLR, executed by the OLR, and filed with the court.

¶ 10. The referee and this court cannot be expected to wait for months without receiving correspondence or formal motions as to the defense of the ongoing proceedings. Attorney Pitts' conduct exhibits an indifference to the rules of this court governing attorney disciplinary proceedings. Even after he was aware that the referee had filed a report and recommendation, he did not take steps to learn of its contents and file an appeal, if he believed one to be necessary. Consequently, we determine that his mailing of an SCR 22.16(4) stipulation to the OLR after the referee had already issued a report and recommendation is of no legal effect and does not preclude us from reviewing the referee's report pursuant to SCR 22.17(2).[4]

¶ 11. We now turn to that review. When we review a referee's report and recommendation, we affirm the referee's findings of fact unless they are clearly erroneous. *See In re Disciplinary Proceedings Against Sosnay,* 209 Wis. 2d 241, 243, 562 N.W.2d 137 (1997). We review the referee's conclusions of law, however, on a de novo basis. *See In re Disciplinary Proceedings Against Carroll*

---

[4] SCR 22.17(2) provides: Review; appeal.

(2) If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter.

2001 WI 130, ¶ 29, 248 Wis. 2d 662, 636 N.W.2d 718. Finally, we determine the appropriate level of discipline, independent of the referee's recommendation. *See In re Disciplinary Proceedings Against Widule,* 2003 WI 34, ¶ 44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶ 12. According to the referee's report, which incorporated the factual allegations of the OLR's complaint, Attorney Pitts was admitted to the practice of law in Wisconsin in January 1996.

¶ 13. Counts 1—3 relate to Attorney Pitts' representation of S.M. in a personal injury matter resulting from an alleged slip and fall in an apartment complex. S.M. executed a contingency fee agreement and an authorization form allowing Attorney Pitts to obtain his records and to speak on his behalf. Because S.M. did not speak English, Attorney Pitts communicated directly only with S.M.'s wife, O.M., although Attorney Pitts apparently spoke with her only on one occasion, when she went in person to his office. Other than that conversation, in which Attorney Pitts claimed he was waiting for a settlement offer, Attorney Pitts' paralegal handled all communications with S.M. and O.M.

¶ 14. After Attorney Pitts reviewed S.M.'s medical records in the fall of 1999, the paralegal prepared a draft demand letter to Society Insurance (Society), the insurer of the apartment complex, and sent the draft to S.M. and O.M. for their review. In January 2000, the paralegal drafted a second demand letter, offering to settle the matter for $25,000. Society never received any such demand letter.

¶ 15. In October 2000, Attorney Pitts made his first contact with Society by faxing a settlement letter. Society responded that it had reviewed the matter and had determined that it had no liability because there had been no actual or constructive knowledge of the

defect alleged by S.M. Society also enclosed a copy of O.M.'s recorded statement from September 1998. Attorney Pitts did not contact Society in response to its letter.

¶ 16. In February 2001, Society contacted Attorney Pitts about the status of his review of the matter. Attorney Pitts told Society that he had been ill and would respond within 90 days. In March 2001, Attorney Pitts informed Society that he could not find the materials it had sent in October 2000 and asked Society to send those materials again, which Society did. Society's March 2001 communication reiterated its position of no liability and asked Attorney Pitts to respond after he had reviewed the information. Attorney Pitts never contacted Society again.

¶ 17. The statute of limitations on any claim by S.M. subsequently expired and Society closed its file on the matter. In October 2001, O.M. filed a grievance with the OLR, alleging that Attorney Pitts had not pursued S.M.'s claim and had not informed them of the expiration of the statute of limitations.

¶ 18. In his response to S.M. and O.M.'s grievance, Attorney Pitts told the OLR that he had met with S.M. and O.M. in December 1999 and had informed them that he did not believe they had a valid claim, advising them to contact another attorney. Attorney Pitts also claimed that he had informed Society in December 1999 that he would not pursue a claim on behalf of S.M.

¶ 19. Attorney Pitts also told the OLR that he had spoken with S.M. and O.M. by telephone in August 2001 and informed them that they would have to file a legal action before the expiration of the statute of limitations. Attorney Pitts asserted that his paralegal had apparently filed a claim with Society on behalf of S.M. without his knowledge.

¶ 20. Attorney Pitts' statements to the OLR were contradicted by Society's records, which showed that it had written or telephonic contact with Attorney Pitts in October 2000, February 2001, and March 2001. In addition, Attorney Pitts' paralegal had Attorney Pitts review a draft demand letter on behalf of S.M.

¶ 21. Based on these facts, the referee concluded that by failing to pursue S.M.'s claim diligently and by allowing the statute of limitations to expire, Attorney Pitts had failed to act with reasonable diligence and promptness, contrary to SCR 20:1.3.[5] The referee also concluded that Attorney Pitts had failed to keep his client reasonably informed about the status of the matter, in violation of SCR 20:1.4(a).[6] Additionally, the referee determined that Attorney Pitts had made misrepresentations to the OLR, thereby violating SCR 22.03(6)[7] and SCR 20:8.4(f).[8]

¶ 22. Counts 4—7 relate to Attorney Pitts' representation of D.H. in a divorce proceeding. When D.H.

---

[5] SCR 20:1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

[6] SCR 20:1.4(a) provides that "[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

[7] SCR 22.03(6) provides that "[i]n the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance."

[8] SCR 20:8.4(f) states that it is professional misconduct for a lawyer to "violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers."

paid Attorney Pitts an initial $1000 retainer in May 2000, Attorney Pitts informed her that she would receive regular billing statements for his legal services. Attorney Pitts did not deposit the initial retainer, however, until October 10, 2000. On that date, Attorney Pitts disbursed the entire retainer to his business account as payment for legal services already rendered, although he had not sent any bills to D.H.

¶ 23. The judgment in the divorce matter was filed on June 11, 2001. Pursuant to the judgment, D.H.'s ex-husband was to make a property equalization payment in excess of $5000. A dispute arose concerning this payment due to damages to the marital home that D.H. had allegedly caused. Opposing counsel sent a letter to Attorney Pitts concerning a reduction of the equalization payment based on an estimate of the needed repairs due to this damage. Opposing counsel also enclosed a check in the amount of $439.36 as an initial deposit toward the equalization payment. Attorney Pitts did not deposit the $439.36 check into his client trust account or inform D.H. that he had received it. He later claimed that his office had accidentally shredded the check.

¶ 24. The circuit court subsequently reduced the equalization payment to be made by D.H.'s ex-husband to $2365. A check in that amount made payable to Attorney Lawrence Pitts Trust Account was received by Attorney Pitts. He did not immediately deposit the money into his client trust account or notify D.H. of his receipt of the payment.

¶ 25. On July 30, 2001, a couple of days after Attorney Pitts received the check, D.H. went to Attorney Pitts' office. Attorney Pitts informed D.H. that the entire amount of the property equalization payment would be applied to his outstanding balance for legal

services. Prior to this time, Attorney Pitts had not informed D.H. that her initial $1000 retainer had been exhausted or that she owed Attorney Pitts additional money. No billings or accountings had been sent to her.

¶ 26. D.H. told Attorney Pitts that she needed the equalization payment for her living expenses. She also requested a billing statement showing Attorney Pitts' services on her behalf.

¶ 27. Attorney Pitts then "loaned" $1000 to D.H. out of the equalization payment and applied the rest toward her outstanding balance. D.H. was informed that she needed to make monthly payments toward her outstanding bill and the loan. Attorney Pitts did not inform D.H. of her right to seek the advice of independent counsel prior to agreeing to the loan, reduce the loan agreement to writing, or obtain D.H.'s written consent to the loan.

¶ 28. Although Attorney Pitts wrote a check drawn on his trust account for $1000 to D.H. for the loan on July 30, 2001, there were no funds belonging to her in the trust account at that time. Attorney Pitts did not deposit the $2365 check for the equalization payment into his client trust account until August 1, 2001. On that date, Attorney Pitts also wrote a trust account check to his law office for $2365, thereby converting D.H.'s money.[9]

¶ 29. D.H. eventually filed a grievance with the OLR, and Attorney Pitts filed an initial response to the grievance. The OLR then reviewed Attorney Pitts' trust

---

[9] When the OLR subsequently reviewed Attorney Pitts' trust account records for this time period, it discovered that Attorney Pitts had also written a trust account check for $1029 to the Brown County Animal Hospital to pay for personal veterinary services.

account records. Because of additional concerns it had, the OLR requested Attorney Pitts to appear personally as well as to produce records relating to the D.H. representation and additional records concerning his client trust account. After multiple delays, Attorney Pitts did appear before the OLR in May 2004, but failed to produce the requested records concerning the D.H. representation and some of the requested client trust account records. The OLR made additional requests for the D.H. documents, but Attorney Pitts never produced them. Although Attorney Pitts did produce some further trust account records, those records were incomplete and he never produced all of the trust account records requested by the OLR.

¶ 30. The referee concluded that Attorney Pitts had violated SCR 20:1.8(a),[10] when he entered into a loan transaction with D.H. without giving her a reasonable opportunity to seek the advice of independent counsel, reducing the loan agreement to writing, or obtaining her written consent to the loan. The referee also determined that Attorney Pitts had failed to notify his client of the receipt of the equalization payment and

---

[10] SCR 20:1.8(a) provides: Conflict of interest: prohibited transactions.

(a) A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client;

(2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and

(3) the client consents in writing thereto.

to deliver such funds promptly to his client, in violation of former SCR 20:1.15(b).[11] Further, Attorney Pitts' actions in disbursing out of his client trust account the $2365 equalization payment to himself and the $1029 payment for personal veterinary services had violated former SCR 20:1.15(a).[12] In addition, the referee con-

[11] Former SCR 20:1.15 applies to misconduct committed prior to July 1, 2004. Former SCR 20:1.15(b) provides: Safekeeping property.

(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person in writing. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render a full accounting regarding such property.

[12] Former SCR 20:1.15(a) provides: Safekeeping property.

(a) A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and third persons that is in the lawyer's possession in connection with a representation or when acting in a fiduciary capacity. Funds held in connection with a representation or in a fiduciary capacity include funds held as trustee, agent, guardian, personal representative of an estate, or otherwise. All funds of clients and third persons paid to a lawyer or law firm shall be deposited in one or more identifiable trust accounts as provided in paragraph (c). The trust account shall be maintained in a bank, savings bank, trust company, credit union, savings and loan association or other investment institution authorized to do business and located in Wisconsin. The trust account shall be clearly designated as "Client's Account" or "Trust Account" or words of similar import. No funds belonging to the lawyer or law firm, except funds reasonably sufficient to pay or avoid imposition of account service charges, may be deposited in such an account. Unless the client otherwise directs in writing, securities in bearer form shall be kept by the attorney in a safe deposit box in a bank, savings bank, trust company, credit union, savings and loan association or other investment institution authorized to do business and located in Wisconsin. The safe deposit box shall be clearly designated as "Client's Account" or

571

cluded that Attorney Pitts had failed to fully and fairly disclose to the OLR the facts and circumstances concerning the D.H. grievance and to cooperate with the OLR's investigation of that grievance, contrary to SCR 21.15(4),[13] SCR 22.03(2),[14] SCR 22.03(6), and SCR 20:8.4(f).

¶ 31. After Attorney Pitts' bank reported an overdraft in his client trust account in August 2002, the OLR audited the account. It discovered that the account had a balance on May 6, 2002, of $7346.70, the ownership of approximately $5000 of which was unknown. The OLR also found that Attorney Pitts had failed to maintain proper records for his client trust account,

"Trust Account" or words of similar import. Other property of a client or third person shall be identified as such and appropriately safeguarded. If a lawyer also licensed in another state is entrusted with funds or property in connection with an out-of-state representation, this provision shall not supersede the trust account rules of the other state.

[13] SCR 21.15(4) provides: Duties of attorneys.

(4) Every attorney shall cooperate with the office of lawyer regulation in the investigation, prosecution and disposition of grievances, complaints filed with or by the director, and petitions for reinstatement. An attorney's wilful failure to cooperate with the office of lawyer regulation constitutes violation of the rules of professional conduct for attorneys.

[14] SCR 22.03(2) provides: Investigation.

(2) Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail a request for a written response. The director may allow additional time to respond. Following receipt of the response, the director may conduct further investigation and may compel the respondent to answer questions, furnish documents, and present any information deemed relevant to the investigation.

including records showing deposits into the account, subsidiary ledgers for individual clients, monthly schedules of each client's account, monthly balances, monthly reconciliations, and cancelled checks. The OLR's audit also revealed that Attorney Pitts had disbursed a $10,000 trust account check to himself when at least $4600 of those funds belonged to identifiable clients or third parties. Although Attorney Pitts claimed that the $10,000 check went to Moose Charities and resulted from funds he had privately raised for that entity, the OLR determined that all of the funds, with the exception of a $368 payment to Moose Charities, were used by Attorney Pitts for personal expenses. When Attorney Pitts subsequently wrote a $1000 trust account check to Moose Charities, at least $764 of that amount belonged to other clients or third parties. Attorney Pitts' actions resulted in overdrafts of the trust account when trust account checks payable to other clients were presented for payment. Although Attorney Pitts did not maintain proper records concerning his trust account, he falsely certified in his fiscal 2001 state bar dues statement that he was in compliance with each of the trust account record-keeping requirements in former SCR 20:1.15(e).[15]

---

[15] Former SCR 20:1.15(e) provided: Safekeeping property.

(e) Complete records of trust account funds and other trust property shall be kept by the lawyer and shall be preserved for a period of at least six years after termination of the representation. Complete records shall include: (i) a cash receipts journal, listing the sources and date of each receipt, (ii) a disbursements journal, listing the date and payee of each disbursement, with all disbursements being paid by check, (iii) a subsidiary ledger containing a separate page for each person or company for whom funds have been received in trust, showing the date and amount of each receipt, the date and amount of each disbursement, and any unexpended balance, (iv) a monthly schedule of the subsidiary ledger, indicating the balance of each client's account at the end of

¶ 32. With respect to Attorney Pitts' trust account, the referee concluded that Attorney Pitts' $10,000 disbursement to himself, which had converted at least $4606.11 in funds belonging to clients or third persons, had violated former SCR 20:1.15(a). The referee also found that Attorney Pitts had failed to maintain complete trust account records, contrary to former SCR 20:1.15(e). Finally, the referee determined that Attorney Pitts had filed a false certification with the state bar, in violation of former SCR 20:1.15(g).[16]

each month, (v) a determination of the cash balance (checkbook balance) at the end of each month, taken from the cash receipts and cash disbursement journals and a reconciliation of the cash balance (checkbook balance) with the balance indicated in the bank statement, and (vi) monthly statements, including canceled checks, vouchers or share drafts, and duplicate deposit slips. A record of all property other than cash which is held in trust for clients or third persons, as required by paragraph (a) hereof, shall also be maintained. All trust account records shall be deemed to have public aspects as related to the lawyer's fitness to practice.

[16] Former SCR 20:1.15(g) provided: Safekeeping property.

(g) A member of the State Bar of Wisconsin shall file with the State Bar annually, with payment of the member's State Bar dues or upon such other date as approved by the Supreme Court, a certificate stating whether the member is engaged in the private practice of law in Wisconsin and, if so, the name of each bank, trust company, credit union or savings and loan association in which the member maintains a trust account, safe deposit box, or both, as required by this section. Each member shall explicitly certify therein that he or she has complied with each of the record-keeping requirements set forth in paragraph (e) hereof. A partnership or professional legal corporation may file one certificate on behalf of its partners, associates, or officers who are required to file under this section. The failure of a member to file the certificate required by this section is grounds for automatic suspension of the member's membership in the State Bar in the same manner as provided in SCR 10.03(6) for nonpayment of dues. The filing of a false certificate is unprofessional conduct and is grounds for

¶ 33. In light of the professional misconduct found by the referee, he recommended that Attorney Pitts' license to practice law in Wisconsin be suspended for a period of six months. He also adopted the OLR's recommendation that this court condition the reinstatement of Attorney Pitts' license on his creation of an office management and business plan establishing a daily calendar, proper trust account records, and an appropriate billing and filing system, with a requirement that Attorney Pitts submit copies of his client trust account records to the OLR on a quarterly basis for two years after reinstatement. The referee further indicated that Attorney Pitts should be assessed the full costs of this disciplinary proceeding.

■

¶ 34. We affirm the referee's entry of a default in this case and adopt the referee's findings of fact and conclusions of law. As recommended by the referee, we conclude that Attorney Pitts' license to practice law in this state should be suspended for six months. We further agree with the reinstatement conditions recommended by the referee. Finally, we determine that Attorney Pitts should be required to pay the costs of this disciplinary proceeding, which were $2495.98 as of February 23, 2007.

¶ 35. IT IS ORDERED that the license of Attorney Lawrence F. Pitts to practice law in Wisconsin is suspended for a period of six months, effective August 31, 2007.

¶ 36. IT IS FURTHER ORDERED that within 60 days of the date of this order, Attorney Lawrence F.

disciplinary action. The State Bar shall supply to each member, with the annual dues statement or at such other time as directed by the Supreme Court, a form on which the certification must be made and a copy of this rule.

Pitts shall pay to the Office of Lawyer Regulation the costs of this proceeding. If the costs are not paid within the time specified and absent a showing to this court of his inability to pay those costs within that time, the license of Attorney Pitts to practice law in Wisconsin shall remain suspended until further order of the court.

¶ 37. IT IS FURTHER ORDERED that reinstatement of Attorney Pitts' license to practice law in Wisconsin is conditioned on the following requirements: (1) his creation of an office management and business plan establishing a daily calendar, appropriate client trust account records, and an appropriate billing and filing system; and (2) his furnishing of his client trust account records to the Office of Lawyer Regulation on a quarterly basis for a period of two years following reinstatement.

¶ 38. IT IS FURTHER ORDERED that if he has not already done so, Attorney Lawrence F. Pitts shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.