IN THE MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Phaidra S. KNIGHT, Attorney at Law:

OFFICE OF LAWYER REGULATION,
Complainant,

v.

Phaidra S. KNIGHT,
Respondent.

Supreme Court

*No. 2006AP2461–D.—Decided February 26, 2008.*

2008 WI 13

(Also reported in 745 N.W.2d 77.)

¶ 1. PER CURIAM. We review the referee's[1] report and recommendation that the license of Attorney Phaidra S. Knight to practice law in Wisconsin be suspended for a period of 90 days, and that Attorney Knight be required to pay the costs of this disciplinary

---

[1] Attorney Kathleen Callan Brady was appointed to serve as the referee in this matter.

proceeding, which were $1,524.29 as of August 22, 2007. After independently reviewing the matter, we agree with and adopt the referee's findings of fact and conclusions of law, which were made after entering a default judgment against Attorney Knight. We determine that Attorney Knight's professional misconduct requires that her license to practice law in Wisconsin be suspended for a period of four months. In addition, we conclude that the reinstatement of Attorney Knight's license should be conditioned upon providing proof that she paid the appropriate funds to clients G.F. and E.C. Finally, we decide that Attorney Knight should pay the costs of this disciplinary proceeding.

¶ 2. Attorney Knight was admitted to the practice of law in Wisconsin in August 1999. She has not been the subject of prior discipline, but her license to practice law in this state was administratively suspended in June 2006 due to her failure to comply with the mandatory reporting requirements for continuing legal education. Her license remains suspended as of the date of this opinion.

¶ 3. On October 9, 2006, the Office of Lawyer Regulation (OLR) filed a complaint against Attorney Knight alleging seven separate counts of professional misconduct arising out of Attorney Knight's solicitations and representations of individuals that might have claims to funds that had escheated to the state and were being held by the Wisconsin State Treasurer. The OLR made multiple attempts to serve Attorney Knight personally with authenticated copies of the complaint and order to answer, but the attempts were unsuccessful. Ultimately, the OLR served Attorney Knight pursuant to SCR 22.13(1) by sending an authenticated copy of the complaint and order to answer to Attorney Knight at the

most recent address she had furnished to the State Bar of Wisconsin.

¶ 4.   After Attorney Knight failed to file an answer to the complaint, an OLR representative was able to contact her by telephone, at which time Attorney Knight provided a new current mailing address. The OLR then filed and served a notice of motion and motion for default. At the time and place set forth in the notice of motion, the OLR appeared but Attorney Knight did not appear. The referee adjourned the default hearing for a short time and instructed the OLR counsel to attempt one more time to contact Attorney Knight. Although the OLR counsel left a voice-mail message instructing Attorney Knight to contact the OLR immediately, Attorney Knight did not respond. When the hearing reconvened, the referee granted the OLR's motion for default.

¶ 5.   By virtue of Attorney Knight's default, the allegations contained in the OLR's complaint were deemed admitted. The referee subsequently filed a report that contained factual findings in accord with the allegations of the complaint. The referee also concluded that those factual findings proved that Attorney Knight had committed the seven counts of professional misconduct alleged by the OLR.

■

¶ 6.   Because no appeal has been filed from the referee's report, we proceed with our review of the matter pursuant to SCR 22.17(2).[2] In conducting our review, we uphold a referee's findings of fact unless they

---

[2] SCR 22.17(2) provides:   Review: appeal.

(2) If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional

are shown to be clearly erroneous. *See In re Disciplinary Proceedings Against Sosnay,* 209 Wis. 2d 241, 243, 562 N.W.2d 137 (1997). We review the referee's conclusions of law, however, on a de novo basis. *See In re Disciplinary Proceedings Against Carroll,* 2001 WI 130, ¶ 29, 248 Wis. 2d 662, 636 N.W.2d 718. Pursuant to our obligation to supervise and regulate the practice of law in this state, we determine the appropriate level of discipline independently, regardless of the referee's recommendation. *See In re Disciplinary Proceedings Against Widule,* 2003 WI 34, ¶ 44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶ 7. The factual findings in this case state that while Attorney Knight was working in the office of former Wisconsin State Senator Gary George, she met an individual by the name of Calvin Eleby, Jr. (Eleby). Eleby operated a governmental affairs consulting business in Michigan. He was also an attorney, but was licensed to practice only in the state of New York. One of Eleby's business interests was to attempt to locate missing heirs and represent them as an attorney in probate court proceedings to retrieve funds that had escheated to the State of Wisconsin and were being held by the Office of the Wisconsin State Treasurer.

¶ 8. Attorney Knight knew that Eleby did not hold a license to practice law in Wisconsin. Nonetheless, on multiple occasions she gave Eleby permission to file Wisconsin probate court pleadings under her name and State Bar of Wisconsin attorney number as part of his process of claiming escheated funds in Wisconsin.

findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter.

¶ 9.   For example, in March 2000 Eleby used Attorney Knight's name and attorney number to file a petition in the Polk County circuit court for the release of escheated funds to Eleby's client, M.E. The court granted the petition and ordered the state to release $30,695.33 to M.E. Eleby convinced the treasurer's office to issue the check in the name of his trust account. In addition to receiving the agreed-upon attorney fee, Eleby improperly misappropriated an additional $10,236.90 for his own purposes, falsely telling M.E.'s family that he was required to pay those funds to the other side of the decedent's family. Eleby was later charged criminally for this theft and admitted his wrongdoing. Although Attorney Knight had allowed Eleby to use her name and attorney number on the probate petition, which ultimately led to the conversion of funds, Attorney Knight had no contact with M.E. and received no part of the attorney fee arising out of Eleby's representation of M.E.

¶ 10.   In October 2001 Eleby signed Attorney Knight's name to a petition he filed in the Barron County circuit court on behalf of client J.W. seeking the release of escheated funds. Although Attorney Knight never practiced law in Michigan or shared an office with Eleby, in November 2001 Eleby sent a letter to the court under letterhead for the purported law firm of "Eleby and Knight" in Birmingham, Michigan. The court ultimately granted the petition and ordered the state treasurer to release $44,124.59 to J.W. On the same date as the court's order, the treasurer's office received a letter again written on "Eleby and Knight" letterhead and purportedly bearing Attorney Knight's signature. The letter authorized Eleby to pick up on behalf of J.W. a check for the released funds that was to be made payable to Attorney Knight's trust account. Eleby sub-

sequently picked up the check and endorsed it as "Phaidra Knight by Calvin Eleby."

¶ 11.   In February 2002 Eleby was hired by J.M. to recover escheated funds. Eleby filed a petition to that effect in the Milwaukee County circuit court, again signing Attorney Knight's name and using her attorney number. When the court scheduled a hearing on the petition, both Attorney Knight and Eleby appeared on behalf of J.M. Because the court was concerned about the sufficiency of the documentation to support J.M.'s claim to the escheated funds, it scheduled another hearing and required J.M. to appear personally. Prior to the second hearing, Eleby sent a letter to the court under Attorney Knight's name that provided additional documentation to support J.M.'s claim. At the second hearing, J.M. personally appeared along with Eleby and Attorney Knight. This was the only contact that J.M. ever had with Attorney Knight. After the court granted the petition, the treasurer's office issued a check in the amount of $41,514.95 made payable to "Phaidre [sic] Knight Atty. Trust FBO[3] [J.M.]."

¶ 12.   Attorney Knight authorized Eleby to pick up the check and to send the appropriate funds to J.M. Eleby endorsed the check on behalf of Attorney Knight and paid her a few hundred dollars for her time and gas expenses. Eleby did not pay any of the funds to J.M., but instead misappropriated all of the remaining funds for his own benefit. When the OLR later questioned Attorney Knight about whether she had taken any actions to ensure that J.M. had received his funds, she indicated that she had asked Eleby about the matter only a couple of times shortly after he had endorsed the state treasurer's check. Attorney Knight stated that Eleby

---

[3] This is an abbreviation of the term "for the benefit of."

had told her on the second occasion that he had delivered a check to his client. Because Attorney Knight had no contact information for J.M., she could not directly inquire of J.M. whether he had received his funds. Attorney Knight simply assumed that Eleby had distributed them properly.

¶ 13. In July 2002 Eleby again signed Attorney Knight's name to a petition in the Racine County circuit court seeking to claim escheated funds from the estate of E.S. Eleby mailed these documents to the circuit court under cover of a letter that bore the heading "Phaidra S. Knight, Eleby Governmental Affairs." As noted above, Attorney Knight and Eleby never practiced together in the same law firm or even shared office space. In a subsequent letter, Eleby informed the court that he was working "on behalf of Attorney Phadria [sic] S. Knight." In August 2002 Eleby signed Attorney Knight's name to a motion requesting the court to allow Eleby to appear pro hac vice in the estate of E.S. matter. The court granted the motion and subsequently granted the petition, authorizing the release of $43,068.97 to the heirs of E.S. that Eleby was representing. Shortly thereafter, Attorney Knight sent an e-mail message to the treasurer's office stating that because she would be unavailable for the next three weeks, the treasurer's office should send the check to her in care of Eleby at Eleby Governmental Affairs. The treasurer's office complied, sending to Eleby the check for $43,068.97 made payable to "Phaidra Knight Trust FBO Heir c/o Calvin Eleby." Although Eleby properly distributed some of the funds, he illegally converted $10,165.56 for his own use.

¶ 14. In March 2003 J.A. and P.G. retained Eleby to recover certain escheated funds from a Wood County estate. Eleby again signed Attorney Knight's name to

the petition and to subsequent pleadings. J.A. and P.G. were unaware of Attorney Knight, having never heard of her or met her. They believed that Eleby alone was representing them. After the state initially opposed the petition, Attorney Knight and Eleby both appeared on behalf of J.A. and P.G. in two teleconferences with the circuit court. Ultimately, the court granted the petition and ordered the state treasurer to disburse $16,500 to Attorney Knight for the benefit of J.A. and P.G. On June 16, 2003, the treasurer's office issued the check in that amount made payable to "Phaidra Knight Atty. Trust Acct. FBO [P.G.] & [J.A.]." Eleby cashed the check, but failed to forward any funds to either J.A. or P.G.

¶ 15.  J.A. and a representative of P.G. subsequently contacted Eleby several times about receiving the funds that belonged to them. The representative of P.G. told Eleby that she would soon report to the state authorities Eleby's failure to distribute the funds. On August 30, 2003, Eleby sent a check for $3,250 to P.G. He deducted from this check his total fees, including those fees that were the responsibility of J.A. Eleby never sent any payment to J.A.

¶ 16.  In addition to cases in which Attorney Knight allowed Eleby to use her name and attorney number to practice law in Wisconsin, Attorney Knight also handled some escheated funds cases on her own. In June 2000 she mailed form solicitation letters and proposed fee agreements to individuals that potentially could have been heirs to escheated funds. Her form letter contained the following language:

> I have located your unclaimed share of the escheated estate of [decedent] in the amount of $[xxx]. In accordance with the Chapter 863 of the Wisconsin statutes, you are entitled to petition for your unclaimed portion. Be aware, however, that there is a statute of limitations

for a petition to be submitted. If you do not file a timely petition, you will waive your rights to make a claim.

¶ 17. Attorney Knight sent these letters to individuals without being sure that she was in fact contacting the person with a legitimate claim to the escheated money and without asking for confirmation of the recipient's identity. In addition, she sent some of these form letters to more than one individual with the same name. Further, her letter did not contain any qualification as to whether the recipient was in fact entitled to claim the escheated funds. None of the form letters Attorney Knight sent were labeled as an advertisement, and Attorney Knight did not file a copy of those letters with the OLR.

¶ 18. Attorney Knight opened a client trust account in June 2000, but maintained it for less than two months. She did not deposit any funds into the account or withdraw any funds from the account while it was open. Instead of using a trust account, on some occasions when she received a check on behalf of a client in an escheated funds matter, she would cash the check from the state treasurer and obtain a cashier's check or money order for the amount she calculated was owed to the client under her retainer agreement. She would send the cashier's check or money order to the client and would retain the remaining amount of the original check as payment for her attorney fee and expenses.

¶ 19. One case in which Attorney Knight pursued escheated funds by herself was her representation of G.F. Attorney Knight filed a petition to recover escheated funds on behalf of G.F. in June 2000. Within a few weeks the petition was granted and the state treasurer issued a check in the amount of $5,708.19 to "Knight, Phaidra Trust FBO [G.F.]." In the course of its

later investigation, the OLR repeatedly requested proof that Attorney Knight had disbursed the proper amount of funds to G.F. Although Attorney Knight promised to provide a receipt confirming G.F.'s receipt of the funds, she never produced any such receipt.

¶ 20. Similarly, in November 2000 Attorney Knight received a check on behalf of client E.C. for $10,945.07 due to a successful claim for recovery of escheated funds. The check was made payable to "Trust Acct Atty. Phaidre [sic] Knight FBO [E.C.]." As was the case with G.F., the OLR later requested proof that E.C. had received her proper share of these funds. Although Attorney Knight again claimed that she had a receipt confirming payment to E.C. and promised to send it to the OLR "right away," she never produced any such receipt.

¶ 21. The various situations involving Eleby's pattern of illegal conduct began to come to light in the summer and fall of 2003. In July 2003 J.M. consulted an attorney, who contacted Eleby about the funds due to J.M. Eleby replied that he could not disburse the funds to J.M. at that time because they were in Attorney Knight's account and she was out of the country for several weeks. In September the attorney contacted Attorney Knight directly and raised the possibility of contacting the police and lawyer regulation authorities. Attorney Knight then spoke with Eleby, who admitted that he had spent J.M.'s money. Attorney Knight informed J.M.'s current attorney of Eleby's confession. That attorney contacted the Milwaukee County district attorney's office and the OLR to inform them that Eleby and Attorney Knight had stolen approximately $30,000 that rightfully belonged to J.M.

¶ 22. The district attorney's office investigated the matter and ultimately obtained an admission from

Eleby that he had converted funds in four cases. In two of the matters, which formed the basis of criminal charges against Eleby, the funds that Eleby stole came from checks that had been made payable to Attorney Knight's trust account. Also, Attorney Knight had personally appeared at hearings in two of the cases with Eleby. In another matter, Attorney Knight had personally sent an e-mail to the state treasurer's office to request that the check be sent to her at Eleby's address. Eleby ultimately pled guilty to two felony counts of theft in a business setting. Although Attorney Knight was interviewed as part of the criminal investigation, she was not charged with any criminal offenses.

¶ 23. On the basis of these factual findings, the referee concluded that the OLR had properly proven each of the seven counts of professional misconduct alleged in the OLR's complaint. First, by agreeing to allow Eleby, who was not licensed to practice law in Wisconsin, to use her name and attorney number to represent clients in Wisconsin courts, Attorney Knight assisted an unlicensed person in conduct that constitutes the unauthorized practice of law in this state, in violation of former SCR 20:5.5(b).[4] Attorney Knight also knowingly made a false statement of fact to a

---

[4] Effective July 1, 2007, substantial changes were made to the Wisconsin Supreme Court Rules of Professional Conduct for Attorneys, SCR Chapter 20. *See* S.Ct. Order No. 04–07, 2007 WI 4, 293 Wis. 2d xv; and S.Ct. Order No. 06–04, 2007 WI 48, 297 Wis. 2d xlvii. Since the conduct underlying this case arose prior to July 1, 2007, all references to the supreme court rules will be to those in effect prior to July 1, 2007.

Former SCR 20:5.5(b) states that a lawyer shall not "assist a person who is not a member of the bar in the performance of activity that constitutes the unauthorized practice of law."

tribunal in violation of SCR 20:3.3(a)(1)[5] and SCR 20:8.4(a)[6] when she allowed Eleby to sign her name to correspondence and pleadings that she had never seen, thereby misrepresenting to the court that a Wisconsin-licensed attorney was involved in the representation.

¶ 24. Third, by failing to deposit checks she received from the state treasurer's office for the benefit of her own personal clients into one or more identifiable client trust accounts, Attorney Knight violated SCR 20:1.15(a).[7] Attorney Knight also violated former

---

[5] Former SCR 20:3.3(a)(1) provides that a lawyer shall not knowingly "make a false statement of fact or law to a tribunal."

[6] Former SCR 20:8.4(a) states that it is professional misconduct for a lawyer to "violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another."

[7] Former SCR 20:1.15(a) (effective through June 30, 2004) provided:

> A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and third persons that is in the lawyer's possession in connection with a representation or when acting in a fiduciary capacity. Funds held in connection with a representation or in a fiduciary capacity include funds held as trustee, agent, guardian, personal representative of an estate, or otherwise. All funds of clients and third persons paid to a lawyer or law firm shall be deposited in one or more identifiable trust accounts as provided in paragraph (c). The trust account shall be maintained in a bank, savings bank, trust company, credit union, savings and loan association or other investment institution authorized to do business and located in Wisconsin. The trust account shall be clearly designated as "Client's Account" or "Trust Account" or words of similar import. No funds belonging to the lawyer or law firm, except funds reasonably sufficient to pay or avoid imposition of account service charges, may be deposited in such an account. Unless the client otherwise directs in writing, securities in bearer form shall be kept by the attorney in a safe deposit box in a bank, savings bank, trust company, credit union, savings and loan association or other investment institution

SCR 20:1.15(e)[8] by failing to prepare complete records of trust account funds or other trust property, including records documenting the disposition of client funds, and to preserve such records for at least six years after termination of the representation.

authorized to do business and located in Wisconsin. The safe deposit box shall be clearly designated as "Client's Account" or "Trust Account" or words of similar import. Other property of a client or third person shall be identified as such and appropriately safeguarded. If a lawyer also licensed in another state is entrusted with funds or property in connection with an out-of-state representation, this provision shall not supersede the trust account rules of the other state.

[8] The OLR's complaint and the referee's report mistakenly list the appropriate rule in this violation as "SCR 20:1.15(3)," which does not exist. It is clear from the description of the violation in the complaint and report, however, that the OLR and the referee intended to refer to former SCR 20:1.15(e), in effect prior to July 1, 2004. That provision stated as follows:

(e) Complete records of trust account funds and other trust property shall be kept by the lawyer and shall be preserved for a period of at least six years after termination of the representation. Complete records shall include: (i) a cash receipts journal, listing the sources and date of each receipt, (ii) a disbursements journal, listing the date and payee of each disbursement, with all disbursements being paid by check, (iii) a subsidiary ledger containing a separate page for each person or company for whom funds have been received in trust, showing the date and amount of each receipt, the date and amount of each disbursement, and any unexpended balance, (iv) a monthly schedule of the subsidiary ledger, indicating the balance of each client's account at the end of each month, (v) a determination of the cash balance (checkbook balance) at the end of each month, taken from the cash receipts and cash disbursements journals and a reconciliation of the cash balance (checkbook balance) with the balance indicated in the bank statement, and (vi) monthly statements, including canceled checks, vouchers or share drafts, and duplicate deposit slips. A record of all property other than cash which is held in trust for clients or third persons, as required by paragraph (a) hereof, shall also be maintained. All trust account records shall be deemed to have public aspects as related to the lawyer's fitness to practice.

¶ 25. Counts five and six relate to the solicitation letters that Attorney Knight sent to potential clients in escheated funds matters. The referee concluded that by failing to conspicuously label such letters with the word "Advertisement," and by failing to file a copy of those letters with the OLR within five days of their dissemination, Attorney Knight had violated SCR 20:7.3(b).[9] In addition, Attorney Knight's solicitation letters stated without qualification that she had located the addressee's unclaimed share of escheated funds when in fact she did not know if she was contacting the correct person. In so doing, the referee concluded that Attorney Knight had made false and misleading statements to potential clients by omitting a fact necessary to make the statement considered as a whole not materially misleading and by creating a false expectation about the results she could achieve, in violation of SCR 20:7.1(a).[10]

¶ 26. Finally, because Attorney Knight had failed to provide the OLR with documents evidencing payments to certain of her clients after she had asserted that she had located such documents and had promised to provide them to the OLR immediately, the referee concluded that Attorney Knight had violated SCR 22.03(6).[11]

---

[9] Former SCR 20:7.3(b) states: "A written communication under par. (a) shall be conspicuously labeled with the word 'Advertisement' and a copy of it shall be filed with the office of lawyer regulation within 5 days of its dissemination."

[10] Former SCR 20:7.1(a) states, in part, that "[a] lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services."

[11] SCR 22.03(6) states, "In the course of the investigation, the [attorney's] wilful failure to provide relevant information, to

¶ 27. After independently reviewing the matter, we adopt the referee's findings of fact. We also agree that those facts demonstrate that Attorney Knight committed each of the seven counts of professional misconduct alleged against her.

¶ 28. With respect to the level of discipline, the referee recommended that Attorney Knight's license to practice law in Wisconsin be suspended for a period of 90 days and that she be required to pay the costs of this disciplinary proceeding.

¶ 29. Concerned that the recommended discipline may not be adequate for the seriousness of the professional misconduct, we directed both Attorney Knight and the OLR to show cause why the discipline should not be a six-month suspension. Attorney Knight failed to file a response to the order to show cause.

¶ 30. The OLR filed a response that continued to request a 90–day suspension. The OLR acknowledged that whether Attorney Knight's suspension should be for 90 days or for a period of six months or more, which would require a formal petition and hearing for reinstatement, was a close call. It stated that it had considered Attorney Knight's conduct to fall between two cases. *Compare In re Disciplinary Proceedings Against Fischer,* 176 Wis. 2d 145, 499 N.W.2d 677 (1993) (60–day suspension imposed where attorney signed and filed pleadings and briefs without adequately reviewing them and ensuring the accuracy of the factual assertions and the validity of the legal positions) *with In re Disciplinary Proceedings Against Ness,* 2002 WI 114, 256 Wis. 2d 33, 651 N.W.2d 724 (nine-month suspension

answer questions fully, or to furnish documents and the [attorney's] misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance."

imposed where Wisconsin attorney misrepresented his license status and authority to appear pro hac vice in several Minnesota courts and made misrepresentations in advertising his Minnesota-based law firm with little or no acknowledgement of wrongdoing).

¶ 31. The OLR also stated that the default nature of the disciplinary proceeding may have kept some mitigating factors from being fully disclosed. First, it noted that, with the exception of providing certain documents as discussed below, Attorney Knight had cooperated with the vast majority of the OLR's investigation, including providing a personal interview with the OLR investigators, and had expressed "some remorse." Second, the OLR discovered through its investigation that after learning of Eleby's wrongdoing, Attorney Knight followed up on some cases, cooperated with law enforcement, and personally made payments to clients who had not received the monies that were due to them. The OLR also emphasized that it had uncovered no evidence that Attorney Knight had personally obtained any improper profits from Eleby's misconduct or her own. Indeed, the OLR indicated that because of Attorney Knight's limited experience as a lawyer, it felt that Attorney Knight had looked to Eleby as a mentor, "and therein became somewhat of a victim herself."

¶ 32. In addition to explaining the basis for its request for a 90–day suspension, the OLR also reiterated a request that the reinstatement of Attorney Knight's license to practice law in Wisconsin be conditioned upon providing proof that she has made the appropriate payments to clients E.C. and G.F. *See, e.g., In re Disciplinary Proceedings Against Pitts,* 2007 WI 112, 304 Wis. 2d 556, 735 N.W.2d 917 (attorney's reinstatement following 60–day suspension conditioned on

creation of office management and business plan and quarterly furnishing of client trust account records); *In re Disciplinary Proceedings Against Kitchen,* 2004 WI 83, 273 Wis. 2d 279, 682 N.W.2d 780 (attorney's reinstatement following 60–day suspension conditioned on providing certain records to OLR). Although the OLR did not indicate that it believed Attorney Knight had converted any of those clients' funds, Attorney Knight failed to submit the receipts to verify her assurances that the proper payments had been made.

¶ 33.  While we acknowledge Attorney Knight's inexperience, her expression of remorse, her attempts to rectify some of the harm to clients, and the lack of evidence that she explicitly knew of Eleby's conversion of funds, we cannot agree with a characterization of Attorney Knight as a "victim." She knowingly allowed an individual who was not licensed in Wisconsin to use her name and attorney number to represent clients in the courts of this state. Moreover, she allowed Eleby to cash and disburse checks that were made out to her and to her trust account apparently without any effort to ensure that the clients received the funds to which they were entitled. These actions ultimately led to the theft of funds that belonged to clients for whom Attorney Knight was responsible. Further, Attorney Knight's failure to maintain and utilize an appropriate client trust account demonstrates an alarming lack of understanding or a disregard of one of a lawyer's core duties—protecting the interests of clients and their property.

¶ 34.  We view Attorney Knight's repeated acts of professional misconduct as serious breaches of her obligations as an attorney in this state. Based on the totality of the facts before us, we conclude that Attorney Knight's license to practice law in Wisconsin must

be suspended for a period of four months. In addition, we adopt the OLR's request that the reinstatement of her license to practice law in this state be conditioned upon providing acceptable proof to the OLR that Attorney Knight has paid all of the necessary amounts to clients E.C. and G.F.

¶ 35.   IT IS ORDERED that the license of Attorney Phaidra S. Knight to practice law in Wisconsin is suspended for a period of four months, effective as of the date of this order.

¶ 36.   IT IS FURTHER ORDERED that reinstatement of Attorney Phaidra S. Knight's license to practice law in Wisconsin is conditioned on providing written documentation, in a form reasonably acceptable to the Office of Lawyer Regulation, that Attorney Knight has paid to clients E.C. and G.F. all funds to which they are entitled.

¶ 37.   IT IS FURTHER ORDERED that within 60 days of the date of this order, Attorney Phaidra S. Knight shall pay to the Office of Lawyer Regulation the costs of this proceeding. If the costs are not paid within the time specified and absent a showing to this court of her inability to pay those costs within that time, the license of Attorney Knight to practice law in Wisconsin shall remain suspended until further order of this court.

¶ 38.   IT IS FURTHER ORDERED that if she has not already done so, Attorney Phaidra S. Knight shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.